828 F.2d 228
 18 Envtl. L. Rep. 21,390
 Clifford E. MEREDITH; Ashby Partnership, a Maryland General
Partnership, Plaintiffs-Appellants,
v.
TALBOT COUNTY, MARYLAND, a Political Subdivision and
Maryland Municipal Corporation; Deborah A. Bauer,
in her official capacity as Planning
Officer for Talbot County
Maryland,
Defendants-
Appellees.
 No. 87-1584.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 8, 1987.
Decided Sept. 8, 1987.
 
 George Joseph Goldsborough, Jr. (Richard S. Phillips, Goldsborough & Tolley, Easton, Md., on brief) for plaintiffs-appellants.
 Waller Staples Hairston (James M. Slay, Jr., James A. Chance, Henry, Hairston & Price, Easton, Md., J. Joseph Curran, Jr., Atty. Gen., Baltimore, Md., Thomas A. Deming, Asst. Atty. Gen., Annapolis, Md., on brief) for defendants-appellees.
 
 
 1
 Before CHAPMAN and WILKINS, Circuit Judges, and HAMILTON, United States District Judge for the District of South Carolina, sitting by designation.
 
 
 2
 HAMILTON, District Judge, Sitting by Designation:
 
 
 3
 In this appeal, Clifford E. Meredith[1] and Ashby Partnership, appellants, challenge the decision of the district court to abstain from deciding appellants' action for damages or injunctive relief against Talbot County, Maryland, and its Planning Officer for their refusal to allow subdivision and residential development of five lots, constituting approximately forty acres, of Ashby, a 200.67-acre tract of land located on the upper reaches of the Miles River in Talbot County, Maryland. Upon motion of Talbot County, its Planning Officer, and the State of Maryland as amicus curiae, the district court ruled that abstention was required under both the Burford[2] and Pullman[3] abstention doctrines and dismissed the complaint. Finding no error, we affirm.I.
 
 
 4
 On August 16, 1985, Ashby Partnership contracted to purchase Ashby intending to subdivide the property and to develop it for sale as large, individual residential lots. According to the Talbot County Zoning Code, the property was located in an agricultural "A-5" zone, which permitted twelve potential uses of the land. One of the permitted uses was the construction of single family dwellings on five-acre parcels.
 
 
 5
 Ashby Partnership applied for subdivision approval, and, during the application process, all parties learned that a portion of Ashby was inhabited by two rare and endangered species, the American bald eagle and the Delmarva fox squirrel. Because of the presence of these rare and endangered species, the Talbot County Planning Officer decided that the subdivision plat did not comply with Sec. 8-1813(a)(2) of the Chesapeake Bay Critical Area Protection Program. Md.Nat.Res.Code Ann. Sec. 8-1813(a)(2) (1983).[4] This section is entitled "[p]rior project approval" and provides in pertinent part, that:
 
 
 6
 [f]rom June 1, 1984 with regard to any subdivision plat approval ... affecting any land or water area located within the initial planning area identified in Sec. 8-1807(a) of this subtitle, ... the approving authority of the local jurisdiction in rendering its decision to approve an application shall make specific findings that:
 
 
 7
 ....
 
 
 8
 (2) [t]he applicant has identified fish, wildlife, and plant habitat which may be adversely affected by the proposed development and has designed the development so as to protect those identified habitats whose loss would substantially diminish the continued ability of populations of affected species to sustain themselves.
 
 
 9
 Md.Nat.Res.Code Ann. Sec. 8-1813(a)(2) (1983).
 
 
 10
 In order to protect the habitats of the American bald eagle and the Delmarva fox squirrel, it was recommended that lots 10 through 14 of the subdivision, constituting approximately forty acres and the area of the habitats, be reserved.
 
 
 11
 During the pendency of the application for subdivision of Ashby, the Talbot County Council adopted a moratorium prohibiting subdivision of land in Talbot County after December 1, 1985. In order to ensure approval of the subdivision prior to the imposition of the moratorium, Ashby Partnership agreed to accept certain restrictions on lots 10 through 14 of the proposed subdivision. These restrictions included the stipulation that lots 10 through 14 not be offered for sale to the public, or to any person or entity other than a bonafide conservation organization, and that there would be no development of these lots except in accordance with the Planning Commission's recommendations.
 
 
 12
 No appeal was taken from the approval of the subdivision, although Ashby Partnership later requested the Planning Officer to approve an amended plat showing lots 10 through 14 as two, or even one, buildable sites. This request was denied. Thereafter, in April, 1986, Ashby Partnership sought a waiver of the conditions imposed on lots 10 through 14 from the Talbot County Board of Appeals. This request was also denied.
 
 
 13
 On July 11, 1986, appellants filed this action in the district court requesting compensatory damages for the "taking" of their property[5] or, in the alternative, a mandatory injunction requiring the Talbot County Planning Officer and Talbot County to permit the subdivision and residential development of lots 10 through 14.
 
 
 14
 Talbot County and its Planning Officer, joined by the State of Maryland as amicus curiae, asked the district court to abstain from deciding this action and to dismiss the complaint. The district court decided that abstention was required under both the Burford and Pullman abstention doctrines, and therefore, dismissed the complaint.
 
 
 15
 On appeal, appellants contend that the district court erred in abstaining from exercising jurisdiction over this action, and that, even if abstention was appropriate, the district court erred in dismissing the complaint.
 
 II.
 
 16
 The district court decided that abstention was required under both the Burford and Pullman abstention doctrines. "The purpose of Burford abstention is to prevent a federal court from interfering with a 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.' " Browning-Ferris, Inc. v. Baltimore County, Maryland, 774 F.2d 77, 79 (4th Cir.1985) (quoting Aluminum Co. v. Utilities Commission of North Carolina, 713 F.2d 1024 (4th Cir.1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984)). Pullman abstention, however, is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question. 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4242; Kent Island Joint Venture v. Smith, 452 F.Supp. 455, 461 (D.Md.1978).
 
 
 17
 In Count I of the complaint, appellants assert that their property has been "taken" without compensation for a public purpose and to achieve a public benefit in violation of the fifth amendment of the Constitution and 42 U.S.C. Sec. 1983. In Count II of the complaint, appellants assert that the appellees have acted arbitrarily, capriciously, and in violation of state and local law, thereby violating the fourteenth amendment of the Constitution and 42 U.S.C. Sec. 1983. Because of these alleged violations, appellants request compensatory damages for the "taking" of their property or, in the alternative, a mandatory injunction requiring the Talbot County Planning Officer and Talbot County to permit the subdivision and residential development of lots 10, 11, 12, 13 and 14.
 
 
 18
 Appellants contend that abstention is not appropriate because the only issue in this case is whether there has been a "taking" of their property without compensation. They claim that they are not challenging the eminent domain power of Talbot County, but are only asserting that the County is obligated to provide just compensation for what it has taken.
 
 
 19
 However, appellants' assertion that there is only one issue in this action is contradicted by the complaint they filed in the district court. In the complaint, appellants clearly allege that appellees have violated state and local law and seek, in addition to compensatory damages for the "taking" of their property, a mandatory injunction requiring Talbot County to allow the subdivision and residential development of these lots. It would appear that in their quest to remain in federal court, appellants have misconstrued their own complaint.
 
 
 20
 The district court ruled that Burford abstention is proper in the instant action because the claims asserted by appellants raise questions that implicate the policies of Talbot County concerning the use of local land. The district court further ruled that Pullman abstention is appropriate because appellants' claims implicate the interpretation of laws contained in the Chesapeake Bay Critical Area Protection Program and because the interpretation of these laws could avoid the federal constitutional claim.
 
 
 21
 The district court's application of both of these abstention doctrines is appropriate here. The underlying purpose of Burford abstention is to enable federal courts to avoid needless conflict with the administration by a state of its own affairs. See 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4243. In Fralin and Waldron, Inc. v. City of Martinsville, 493 F.2d 481 (4th Cir.1974), this court affirmed the district court's decision to abstain in a case challenging the failure of a local entity to grant specific zoning approval. In deciding that abstention was appropriate, the court commented that abstention would "avoid needless friction in federal-state relations over the administration of purely state affairs." Fralin, 493 F.2d at 483. In a more recent case involving abstention in a dispute over a local zoning decision, this court again held that abstention was required, quoting and relying on the reasoning of Fralin, including the above-cited passage. Caleb Stowe Associates, Ltd. v. County of Albemarle, Virginia, 724 F.2d 1079, 1080 (4th Cir.1984). Thus, it appears settled that zoning involves important matters of state and local policy which, if the other requirements of Burford abstention are present, should remain a purely state affair.
 
 
 22
 For Burford abstention to be appropriate, however, a "complex state regulatory scheme ... for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded" must also be present. Browning-Ferris, 774 F.2d at 79. The procedures, programs, statutes, regulations, planning boards, and officials involved in the subdivision approval process qualify zoning in Talbot County, Maryland, as being governed by a complex state regulatory scheme. Further appellees assert that several levels of state review of zoning decisions exist, including: (1) an appeal from The Talbot County Planning Commission to the County Board of Appeals;[6] (2) an appeal from the County Board of Appeals to the Circuit Court for Talbot County; and (3) a complaint seeking declaratory and injunctive relief in the Circuit Court for Talbot County. Thus, if appellants wish to challenge the decision to reserve these lots, as they assert in the complaint, they should, at least, partly for the reasons underlying and on the basis of Burford abstention, be required to proceed in the local and state courts of Maryland.
 
 
 23
 Pullman abstention is likewise appropriate here. As previously mentioned, Pullman abstention is appropriate where the case may be disposed of by a decision on questions of unsettled state law. The decision to reserve lots 10 through 14 was based on newly enacted state law, Sec. 8-1813 of the Chesapeake Bay Critical Area Protection Program, which has not been interpreted by Maryland's trial or appellate courts. If the Maryland state courts grant the injunction prayed for by appellants, the federal constitutional questions raised in the complaint would disappear. Thus, Pullman abstention is certainly appropriate here.
 
 III.
 
 24
 Appellants also assert that even if federal court abstention is appropriate, the district court should have retained jurisdiction over the instant action rather than dismissing it. The usual rule is to retain jurisdiction in Pullman situations, but to dismiss in Burford situations. 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Secs. 4243, 4245. Wright, Miller & Cooper also recommend that district courts dismiss actions where abstention is justified on both Pullman and Burford grounds. 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4245.
 
 
 25
 Retention of jurisdiction may have been a more cautious route for the district court to have followed. See Caleb-Stowe, 724 F.2d at 1080; Fralin, 493 F.2d at 483. However, it was not erroneous for the district court to dismiss the complaint because retention of jurisdiction does not comport with the underlying principles and purpose of Burford abstention.[7]
 
 IV.
 
 26
 Although appellants assert that they are only seeking compensation for the "taking" of their property, they are also seeking an injunction that significantly involves local zoning law and which, for the reasons stated above, makes both Burford and Pullman abstention appropriate. Because Burford abstention is significantly involved, the district court did not err in dismissing the complaint.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Clifford E. Meredith is the managing partner of Ashby Partnership
 
 
 [2]
 The Burford abstention doctrine was enunciated in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)
 
 
 [3]
 The Pullman abstention doctrine takes its name from Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [4]
 The Chesapeake Bay Critical Area Protection Program was enacted by the Maryland General Assembly as part of the Chesapeake Bay Initiatives, which were apparently designed to halt and reverse the Chesapeake Bay's environmental decline
 
 
 [5]
 See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California, --- U.S. ----, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)
 
 
 [6]
 Appellants have apparently exhausted this avenue of appeal
 
 
 [7]
 Appellants may wish to preserve their right to have their federal claims decided in federal court in the event of an adverse state court determination on questions of state and local law. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 419-22, 84 S.Ct. 461, 466-68, 11 L.Ed.2d 440 (1964)