**SEA CABIN ON THE OCEAN IV HOMEOWNERS ASSOCIATION, Plaintiff,**

v.

**CITY OF NORTH MYRTLE BEACH, Mayor Phil Tilghman, Defendants.**

Civ. A. No. 4:90–1411–2.

United States District Court, D. South Carolina, Florence Division.

July 29, 1993.

Richard H. Willis, Nelson, Mullins, Riley & Scarborough, Columbia, SC and Newman Jackson Smith, Nelson, Mullins, Riley & Scarborough, Charleston, SC, for plaintiff.

Louis Milton Cook, North Myrtle Beach, SC and Roy Dawson Bates, Columbia, SC, for defendants.

## ORDER AND OPINION

MORGAN, District Judge.

### PROCEDURAL BACKGROUND

Plaintiff Sea Cabin on the Ocean IV Homeowners Association ("Plaintiff") brought this action on June 28, 1990, seeking declaratory and injunctive relief from Defendants City of North Myrtle Beach ("City") and Mayor Phil Tilghman.[1] The gravamen of Plaintiff's complaint was that the City refused to grant the necessary permit to rebuild a pier owned and operated by Plaintiff and destroyed by Hurricane Hugo in September 1989. Specifically, the City conditioned the issuance of the requisite Pier Franchise Agreement ("Agreement") on Plaintiff's consent to open its pier to the public. On July 22, 1992, this Court granted partial summary judgment to Plaintiff, finding that the City's Agreement conflicted with a recent amendment to South Carolina's Beach Management Act.

Following a bench trial on May 17–18, 1993, this Court requested post-trial briefs

---

1. At trial, defense counsel made a motion to dismiss Mayor Tilghman as a Defendant in this case which the Court took under advisement. The Court FINDS that Mayor Tilghman, who was sued in his official capacity, enjoys absolute legislative immunity from suit under 42 U.S.C. § 1983. *Baker v. Mayor and City Council of Baltimore,* 894 F.2d 679, 681–82 (4th Cir.), *cert. denied,* 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir.1980). Accordingly, the Court GRANTS the City's motion to dismiss Mayor Tilghman as a Defendant in this action.

on several matters and took the remaining issues under advisement. The Court has considered the parties' briefs and supporting authority and the case is now ready for decision.

### THE PARTIES

1. Plaintiff is an unincorporated association comprised of the owners of certain ocean-front apartments in North Myrtle Beach, South Carolina. The apartments are identified in a Master Deed creating "Sea Cabin on the Ocean IV," and the homeowners jointly own the Sea Cabin Pier which is identified as a common element of the Master Deed.

2. Defendant City of North Myrtle Beach is a municipal corporation organized under the laws of South Carolina, and responsible for promulgating various city ordinances and franchises controlling the commercial use of the public beaches between the city's municipal boundary and the Atlantic Ocean.

### FACTS

On May 15, 1952, the Army Corps of Engineers authorized one C.D. Nixon to construct a pier extending into the Atlantic Ocean at Cherry Grove Beach in North Myrtle Beach. Pl.Exh. 7. The construction of this pier was specifically authorized by Act No. 499 of the South Carolina General Assembly on May 13, 1952. Thereafter, a fishing pier was constructed, extending approximately 900 feet into the ocean.[2] On June 15, 1955, Nixon conveyed the ocean-front property to J.A. Goodson, "[t]ogether with all ... appurtenances to the said premises...." Pl.Exh. 8. Between 1955 and 1980, the public was invited on to the pier to walk for free and to fish for a nominal fee. Goodson conveyed the property to the Sea Cabin Corporation, a developer, on January 24, 1980. Pl.Exh. 14. This deed conveyed the realty as well as "Appurtenances to the said Premises." *Id.* Sea Cabin Corporation conveyed "certain real property, buildings and improvements"

to the Sea Cabin homeowner's association (e.g., the Plaintiff) on July 15, 1980. Pl.Exh. 15 at 1.

The Master Deed provides: "Each Apartment has appurtenant to it an undivided interest in the common elements.... Improvements which constitute common elements are ... the pier [and] pier building...." *Id.* at 350. On August 12, 1980, the parties executed a "Second Amendment to the Master Deed" that conveyed "the land, the buildings, all improvements and structures thereon and all easements, rights and appurtenances belonging thereto...." Pl. Exh. 16 at 345. The same day, the parties executed a Bill of Sale and Assignment whereby Sea Cabin Corporation transferred to Plaintiff "all of our right, title and interest, legal and/or equitable in and to any and all portions of the North Cherry Grove Fishing Pier...." Pl.Exh. 17 at 361.

After Plaintiff purchased the pier in 1980, it took various steps to halt the public's access to the pier. These steps included: placing a gate on the pier that could only be opened with a card-key issued to residents of the Sea Cabin condominium complex, periodically changing the card-key lock, posting a large "No Trespassing" sign on the gate and by calling the police when trespassers were spotted on the pier. After 1980, the only portion of the pier open to the public was a snack shop at that portion of the pier directly over the beach.

On or about September 22, 1989, Hurricane Hugo struck the Atlantic seaboard, causing significant damage to the South Carolina coast, including North Myrtle Beach. Plaintiff's pier was severely damaged by the storm, rendering some portions that survived the hurricane unsafe for its intended use. On March 6, 1990, the City adopted an ordinance declaring Plaintiff's pier, and all other piers damaged by Hurricane Hugo, to be public nuisances and requiring abatement of the nuisances. On April 9, 1990, the City

---

**2.** It is not clear from the evidence exactly when the pier was built. The Plaintiff states it was either constructed by Nixon between 1952–55 or

by J.A. Goodson after 1955. Pl. 6/1/93 Mem. at 10 n. 3. The City contends Goodson built the

enacted a second ordinance, section 5–14(b),[3] which required the Plaintiff to enter into a "pier franchise agreement" or "pier license agreement" with the City before it would authorize the rebuilding of another pier. Pursuant to this ordinance, the City attached a non-negotiable requirement that the Plaintiff agree to open its pier to the public as a condition to receiving a permit to rebuild the pier. Plaintiff refused to acquiesce to the City's demand.

Plaintiff instituted this action on June 28, 1990,[4] alleging that the actions taken by the City resulted in an unlawful taking of private property in violation of the Fifth Amendment of the Constitution of the United States Constitution and Article I, section 13 of the South Carolina Constitution.[5] Plaintiff's

complaint sought, *inter alia,* a declaratory judgment that (1) the City's actions constituted a taking of private property without just compensation and without due process of law, (2) the City was estopped from applying the ordinances to the Plaintiff's pier and (3) the pier was grandfathered from the ordinances complained of under the City's non-conforming use statute.[6]

Plaintiff moved for summary judgment on October 9, 1990, and the Court conducted a hearing on Plaintiff's motion on September 5, 1991. On July 22, 1992, the Honorable C. Weston Houck, United States District Judge, granted partial summary judgment to the Plaintiff. The Court found that section 5–14(b) was void, as it conflicted with section 48–39–290 [7] of the South Carolina

---

pier after purchasing the property in 1955. Def. 12/28/90 Prop.Find. of Fact at 3 ¶ 3.

**3.** Section 5–14(b) of the North Myrtle Beach Code provided:

Upon the public beaches or public waters, no person shall construct a pier or other amenity, except that this provision shall not prohibit the holder of a pier franchise from exercising the rights and privileges granted therein, nor shall it prohibit the city from granting the holder of a pier franchise or license the rights and privileges of conducting such activity from such pier as the provisions of the franchise or license allow.

**4.** Plaintiff's complaint alleged ten counts: Count One sought a declaratory judgment that the City's March 6, 1990 ordinance effects an unconstitutional taking; Count Two sought a declaratory judgment that the City's April 9, 1990 ordinance effects an unconstitutional taking; Count Three sought invalidation of the March 6, 1990 ordinance on the grounds that it violates Plaintiff's Fifth and Fourteenth Amendment rights; Count Four sought invalidation of the April 9, 1990 ordinance on the grounds that it violates Plaintiff's Fifth and Fourteenth Amendment rights; Count Five sought to estop the Defendants from applying the March 6, 1990 ordinance based upon prior assurances to Plaintiff regarding the status of its pier; Count Six sought a declaratory judgment that its pier is grandfathered under the City's non-conforming use statute; Count Seven asserted an unconstitutional taking under the South Carolina constitution; Count Eight asserted an unconstitutional infringement of private contracts under the South Carolina constitution; Count Nine sought injunctive relief against the destruction of its pier by the City; and Count Ten asserted a claim under 42 U.S.C. § 1983 and sought to recover attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**5.** After Plaintiff instituted the present suit, it also sought approval from the City of North Myrtle Beach Zoning Administrator to rebuild its pier under the City's non-conforming use ordinance. The Zoning Administrator denied Plaintiff's request in August 1990 and Plaintiff appealed that decision to the City's Zoning Board of Adjustment ("Zoning Board"). The Zoning Board affirmed the Zoning Administrator's decision on October 9, 1990. Plaintiff then sought judicial review in the Horry County Circuit Court.

**6.** On July 2, 1990, the Court conducted a hearing on Plaintiff's motion for a temporary restraining order enjoining the City from removing the remainder of the pier. The Plaintiff agreed to remove unsafe portions of the pier and the City agreed they would not attempt to remove any further portions of the pier. Accordingly, Counts One, Three and Five, relating to the public nuisance ordinance, were resolved by agreement of the parties.

**7.** This section states:

(A) No new construction or reconstruction is allowed seaward of the baseline except as follows:

. . . .

(3) fishing piers which are open to the public. Those fishing piers with their associated structures including, but not limited to, baitshops, restrooms, restaurants, and arcades which existed September 21, 1989, may be rebuilt if they are constructed to the same dimensions and utilized for the same purposes and remain open to the public. In addition, those fishing piers with their associated structures which existed September 21, 1989, that were privately maintained, and not open to the public on this date may be rebuilt and used for the same purposes if they are constructed to the same dimensions. . . .

Code.[8] A bench trial was conducted on May 17–18, 1993. Plaintiff argued: it had title to the pier; had standing to bring suit for damages to the pier; the pier was open to the public prior to 1980, but denied the public had acquired rights in the pier through prescription or dedication; the pier was a private pier after 1980 and Plaintiff had taken substantial steps to keep it closed to the public; the state court rulings are not *res judicata* in this action; the pier was grandfathered under the City's non-conforming use statute; and that it was entitled to attorneys' fees and costs under 42 U.S.C. § 1988. The City countered that: Plaintiff never acquired title to the pier; the pier was public, or, in the alternative, that the public had acquired rights through prescription or dedication; the state court rulings are *res judicata* in this action; the pier is not grandfathered under the City's non-conforming use statute; and that Plaintiff is not entitled to attorneys' fees and costs as the City did not commit an unconstitutional taking of the pier.

### ANALYSIS

1. ***Plaintiff's Property Interest in the Pier***

 a. **Pier Is An Appurtenance**

 ■ Both parties agree that if the pier is a common element of the horizontal property regime, the homeowners association has standing to bring an action for damages to the pier. *See Roundtree Villas Ass'n v. 4701 Kings Corp.*, 282 S.C. 415, 321 S.E.2d 46 (1984). The Court FINDS, for the reasons discussed *infra*, that the pier is an appurtenance [9] to the real estate above the mean

high water mark that is indisputably owned by the Plaintiff.

The South Carolina Code expressly states that a dock may be an appurtenance to real property. The Code provides: "a privately owned dock is defined as any dock which is *constructed on or appurtenant to* property on which the person constructing the dock owns a leasehold interest in or title to or has obtained permission, express or implied, from the. title owner to construct the dock." S.C.Code Ann. § 54–13–10 (Law.Co-op.1991) (emphasis added).[10] This section contemplates that private docks include both those built over submerged land owned by the builder *or* those built over submerged land owned by another but with its terminus on property owned by the builder. In the later case, the dock is considered "appurtenant to property on which the person constructing the dock" has title to. *Id.* Hence, South Carolina recognizes that a dock or pier may be an appurtenance to the fastland.

Moreover, the United States Court of Appeals for the Fourth Circuit has held that a pier is considered an appurtenance to the real estate upon which it has its terminus, even when the pier extends out over land that is owned by the state. *United States of America v. 62.61 Acres of Land*, 547 F.2d 818, 821 (4th Cir.1977); *United States v. Gray Line Water Tours*, 311 F.2d 779, 780 (4th Cir.1962). Several state courts have reached the same conclusion—a pier is an appurtenance that passes with the realty at the time of conveyance. *People's Counsel v. Marine Maryland Mfg. Co., Inc.*, 316 Md. 491, 560 A.2d 32, 36 (1989); *Knight v. Ciarlone*, 200 N.Y.S.2d 805 (Sup.Ct.1959). Other courts have found that a pier is an appurte-

---

S.C.Code Ann. § 48–39–290 (Law.Co-op.Supp. 1992).

8. Judge Houck's Order concluded:

 The court finds that the ordinance as applied is irreconcilable with the state statute. . . . Since the April 3, 1990, city ordinance as applied is in conflict with section 49–30–290 of the South Carolina Code, it is therefore void. Accordingly, the court finds that the April 3, 1990, city ordinance as applied is void and that plaintiff is entitled to summary judgment on this issue. 7/22/90 Order at 7.

9. "Appurtenance" has been defined as:

That which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land. . . . An article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold.
*Black's Law Dictionary* 94 (5th ed. 1979).

10. The Code also outlaws trespassing on privately owned docks containing "a notice in a conspicuous place thereon stating that 'Trespassing on this Dock is Prohibited by Law.' " S.C.Code Ann. § 54–13–30 (Law co-op. 1988).

nance to real estate for tax purposes, *Everhart v. Commissioner,* T.C.Memo 1982–396, T.C.M. (P–H) ¶ 82,396, 44 T.C.M. (CCH) 459 (1982), and that a boat slip in a marina is real property for purposes of unlawful detainer status. *Smith v. Municipal Court,* 202 Cal. App.3d 685, 245 Cal.Rptr. 300 (1st Dist.1988).

Accordingly, South Carolina Code section 54–13–10, Fourth Circuit precedent and other case law all compel the conclusion that Plaintiff's pier is an appurtenance to the real property located above the mean high water mark.[11] *See also* 1 Robert E. Beck, *Waters and Water Rights* § 6.01(a)(2), at 104 (1991) ("a lawfully constructed wharf is generally treated as an · extension of the fastland....").[12]

**b. Pier as a Common Element**

■ Having determined the pier is an appurtenance to the real property abutting the beach, the Court also FINDS it passed with the land with each successive transfer. The June 15, 1955 deed from Nixon to Goodson transferred the realty "[t]ogether with all ... appurtenances to the said premises...." Pl.Exh. 8. If the pier had been constructed by this date, it was transferred with the deed. Goodson conveyed the property to the Sea Cabin Corporation on January 24, 1980. Pl.Exh. 14. This deed conveyed the realty as well as "[a]ppurtenances to the said [p]remises." *Id.* If Goodson constructed the pier, it was conveyed as an appurtenance to the Sea Cabin Corporation in the 1980 deed.

On July 15, 1980, the Sea Cabin Corporation conveyed "certain real property, buildings and improvements" to the Plaintiff. Pl. Exh. 15 at 1. The Master Deed provides: "Each Apartment has appurtenant to it an undivided interest in the common elements.... Improvements which constitute common elements are ... the pier [and] pier building...." *Id.* at 350. On August 12, 1980, the parties executed a "Second Amendment to the Master Deed" that conveyed "the land, the buildings, all improvements and structures thereon and all easements, rights and appurtenances belonging thereto...." Pl.Exh. 16 at 345. The same day the parties executed a Bill of Sale and Assignment whereby Sea Cabin Corporation transferred "all of our right, title and interest, legal and/or equitable in and to any and all portions of the North Cherry Grove Fishing Pier...." to the Plaintiff. Pl.Exh. 17 at 361.

The South Carolina Horizontal Property Act defines "property" as "the land whether leasehold or in fee simple and whether or not submerged, the buildings, all improvements, and structures on the land, and all easements, rights, *and appurtenances belonging thereto.*" S.C.Code Ann. § 27–31–20(k) (Law.Co-op.1991) (emphasis added). Hence, the pier, as an appurtenance, was conveyed from Nixon to Goodson, from Goodson to Sea Cabin Corporation and was finally conveyed into the Plaintiff's horizontal property regime by the Master Deed as a common element.[13]

**2. *Plaintiff's Present Interest in the Pier***

**a. Public Rights in the Pier**

The City contends that although prior owners charged a fee for fishing from the pier, more than twenty years of walking on the pier by the public without a fee establishes a presumption of a dedication which was accepted by use. The Court disagrees. The City misinterprets South Carolina's current

---

11. The Court rejects Defendants' argument that appurtenances are "incorporeal rights," such as easements, and not land or personalty. "The term is, however, sometimes also employed to designate things of a corporeal nature, being analogous in this connection to 'fixtures' and 'improvements,' and equivalent to, or interchangeable with, the phrase 'usually held, occupied or enjoyed therewith....'" 6 C.J.S. *Appurtenance* 136 (1975).

12. As this Court finds the pier is an appurtenance to Plaintiff's realty, it need not decide the more difficult question of whether Plaintiff, as

owner of the upland realty, would acquire a property interest in the pier by virtue of South Carolina riparian rights law.

13. The Court cannot help but note the quixotic position of the City with respect to Plaintiff's ownership of the pier. It appears to the Court that the City doggedly pursued every conceivable theory with single-minded abandon. Such action placed the city and its citizens in an extraordinarily adversarial posture. Query, should the city deal with its citizens as a prosecutor does with a defendant—that is seek justice as opposed to "winning at any cost."

law as well as confusing dedication[14] with prescription.[15] *See Boyd v. Hyatt*, 294 S.C. 360, 366 n. 2, 364 S.E.2d 478, 481 n. 2 (Ct. App.1988) ("There is a distinction between public dedication and a private easement created by prescription.").

The Supreme Court of South Carolina discussed both dedication and prescription in *County of Darlington v. Perkins*, 269 S.C. 572, 239 S.E.2d 69 (1977). *Perkins* involved a suit by a county against the owners of a tract of land to determine the rights of the public to use a recreational area located on the bank of a privately owned lake and a dirt road connecting the public road to the area. The court first held the public had acquired an easement in the dirt road through implied dedication: "the continuous and widespread public usage of the road for at least 50 years, without charge or interference from the previous owners and these Landowners, clearly established the public character of the road." *Id.* at 575, 239 S.E.2d at 70. The court noted that "[t]he intention to dedicate land to the public may be implied from circumstances, or by acts or conduct of the owner from which a reasonable inference of an intention may be drawn." *Id.* at 575–76, 239 S.E.2d at 71 (footnote omitted) (citing 23 Am.Jur.2d *Dedication* § 21). "Such an intention may be manifested by the owner's acquiescence in continuous use of the land by the public under the claim of a general public right." *Id.* at 576, 239 S.E.2d at 71.

The supreme court also held that the public had acquired rights in the recreational area through long public usage. The court noted: "It is well settled that the requirements necessary to establish a right by prescription are: (1) the continued and uninterrupted use or enjoyment of the right for a period of 20 years; (2) the identity of the

thing enjoyed; and (3) *the use must be adverse under claim of right.*" *Id.* (emphasis added) (citing *Babb v. Harrison*, 220 S.C. 20, 21, 66 S.E.2d 457, 458 (1951)). The court concluded that "the evidence preponderates to the effect that the public has used the landing area adversely under claim of right for a period in excess of 20 years." *Id.*

■ Under *Perkins'* analysis, the Court believes the City failed to prove the acquisition of public rights through either dedication or prescription. In order for the City to demonstrate a public interest in the pier through implied dedication, they "must demonstrate conduct on the part of the owner clearly, convincingly and unequivocally indicating the owner's intention to create a right in the public to use the property in question adversely to the owner." *Boyd*, 294 S.C. at 364, 364 S.E.2d at 480 (citation omitted). Clearly, the City cannot meet this burden. Allowing the public to walk or fish for a fee on the pier cannot be said to constitute evidence of the owner's intent to create public rights in the pier or to constitute "acquiescence" to continuous use by the public under a claim of a general public right.

■ In addition, the City failed to prove that the public acquired rights in the pier through prescription. The City has cited several old South Carolina cases for the proposition that no adverse use is necessary when the right is acquired by the public.[16] While this may have been the law in past years, the Supreme Court of South Carolina clearly stated a different test in *Perkins* by requiring that "the use must be adverse under claim of right." 239 S.E.2d at 71. The City cannot show adverse use of the pier by the public as it was invited to walk on the pier or fish for a nominal charge.[17]

**14.** "The appropriation of land, or an easement therein, by the owner, for the use of the public, and accepted for such use by or on behalf of the public." *Black's Law Dictionary* 371 (5th ed. 1979).

**15.** "Acquisition of a personal right to use a way, water, light and air by reason of continuous usage." *Id.* at 1064.

**16.** *Caston v. City of Rock Hill*, 107 S.C. 124, 92 S.E. 191 (1917); *State v. Floyd*, 39 S.C. 23, 17 S.E. 505 (1893); *State v. Sartor*, 2 Strob. 60 (1847).

**17.** Defendants claim: "it has been held in other states that title to a wharf or the right to occupy a dock may be obtained by prescription. C.J.S. *Wharves* § 2, p. 572." Def. 6/15/93 Br. at 17. However, this section of C.J.S. states the use must be adverse under claim of right: "To initiate an adverse holding the possession *must be hostile....*" 94 C.J.S. *Wharves* § 2, p. 572 (1975) (emphasis added).

Accordingly, the Court FINDS that the City has failed to show the creation of public rights in the pier. The fact that a few people may have strolled on the pier is not sufficient to establish dedication or prescription. Moreover, since 1980, the Plaintiff has taken reasonable steps to limit public access to all portions of the pier except the snack bar.

### b. State's Interest in the Pier

■ The City devotes considerable portions of its brief to discussing the fact that Plaintiff has only a revocable license in the pier and cannot acquire a property right in the submerged lands upon which the pier rests. Even if this is true, it is irrelevant as South Carolina has given its express approval to Plaintiff to rebuild the pier, (1) through the 1990 amendments to § 48–39–290(A)(3) of the Beach Management Act, and (2) through the issuance of building permits by the South Carolina Coastal Council. It is undisputed in South Carolina that the state owns the land below the mean high water mark. *State v. Hardee*, 259 S.C. 535, 193 S.E.2d 497 (1972). Therefore, while the state might be able to forbid the reconstruction of the pier under certain circumstances, the City cannot do so on the basis that the pier traverses state property or enters upon navigable waters.

The original June 3, 1952 Corps of Engineers permit to Nixon states in subsection (f) that if the United States requires alteration of the pier or if the Secretary of the Army finds the pier obstructs navigable waters, "the owner will be required ... to remove or alter the structural work or obstruction caused thereby...." The permit does not grant the City the authority to order the removal of the pier. Pl.Exh. 7. Moreover, the permit only states that "no attempt shall be made by the permittee or the owner to

forbid the full and free use by the public of all navigable waters at or adjacent to the work or structure." *Id.* subsection (e). The permit does not require public access to the pier itself. There was no evidence presented to suggest that the pier hampers public access to the beach or interferes with the navigable waters surrounding the pier.

Moreover, merely because the Corps of Engineers reserved the right to revoke the property owner's rights in the pier does not, of itself, mean the Plaintiff did not acquire a property interest in the pier. Therefore, the City's suggestion that *it*, not the *Corps of Engineers*, can revoke that property interest at any time cannot be supported.

### 3. *Non-conforming Use/Grandfather Issue*

#### a. Res Judicata

In its sixth cause of action, Plaintiff seeks a declaratory judgment that its pier is grandfathered under the City's non-conforming use provisions.[18] The parties do not contest the fact that there has not been a final adjudication in the South Carolina state courts of the Zoning Board's determination that the pier was more than 75% destroyed.[19] Plaintiff has, in effect, asked this Court to decide the very issue now before the South Carolina state courts (e.g., whether the City's zoning laws prevent the Plaintiff from rebuilding its pier).

■ By federal statute, state judicial proceedings have the same full faith and credit in every federal court as they have in the state court from which they are taken. 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). As such, a party's state court judgment has the same preclusive effect in federal court that the judgment would have in state court. *Mi-*

---

**18.** "A nonconforming use shall not be reestablished after damage exceeding seventy-five (75) percent of its replacement cost at the time of destruction." City of North Myrtle Beach Code, Article VII, § 23–133(3).

**19.** On June 24, 1993, the South Carolina Court of Appeals reversed the Horry County Circuit Court's affirmance of the Zoning Board. The court of appeals held that the circuit court applied the incorrect standard in finding that the

pier was more than 75% destroyed rather than determining whether the cost of repairs exceeds 75% of the cost to replace the structure at the time of destruction.

On July 16, 1993, the court of appeals denied the Zoning Board's July 8, 1993 petition for a rehearing. The Zoning Board was given thirty days from the date of the court's order to file a petition for a Writ of Certiorari to the South Carolina Supreme Court.

gra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Accordingly, the Court must look to South Carolina law to determine whether its consideration of the non-conforming use/grandfather issue is barred by res judicata. The Supreme Court of South Carolina has held:

> To establish res judicata, three elements must be shown: (1) the identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit. Sealy v. Dodge, 289 S.C. 543, 347 S.E.2d 504 (1986). Res judicata also bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Sub–Zero Freezer Co. v. R.J. Clarkson Co., 417 S.E.2d 569 (S.C.1992).

Riedman Corp. v. Greenville Steel Structures, Inc., 419 S.E.2d 217, 218 (S.C.1992).

The doctrine of res judicata also serves to bar relitigation of a special board's determination of a dispute that has been upheld by a state appellate court. See Di Angelo v. Illinois Dep't of Public Aid, 891 F.2d 1260 (7th Cir.1989) (Illinois Appellate Court's affirmance of decision of Illinois Human Rights Commission dismissing employee's age discrimination claims had preclusive effect in federal action under Age Discrimination in Employment Act). See also Davenport v. North Carolina DOT, 776 F.Supp. 1080 (E.D.N.C.1991) (public employee's § 1983 suit alleging dismissal on account of political affiliation was precluded by prior claims under State Personnel Act which had been heard by the Office of Administrative Hearings and had been subject to state judicial review).

 The Court FINDS that the three elements set out by the South Carolina Supreme Court to establish res judicata are present with respect to the non-conforming use/grandfather issue and that Plaintiff's takings claim brought under § 1983 arises from the "same transaction or occurrence" that is the subject of the pending state court proceedings.[20] Riedman Corp., 419 S.E.2d at 218. Thus, the Court believes that a final decision by the South Carolina courts would be res judicata in this Court upon this issue and would preclude a finding by this Court on the constitutionality of the City's ordinance. That is, if the South Carolina state courts ultimately affirm the Zoning Board's ruling, the Plaintiff will be thereby precluded from rebuilding its pier and will not have suffered any unconstitutional taking of its property by the City. On the other hand, if the state courts reverse the Zoning Board, such a finding in combination with the rulings of this Court will enable the Plaintiff to rebuild its pier. As in the former scenario, Plaintiff will not have suffered any permanent deprivation of its property without just compensation by the City.

### b. Pullman Abstention

 Even if a final decision by the South Carolina courts on this issue would not be res judicata in this action, the Court believes it would be bound to abstain under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Pullman considered the situation where "a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." Id. at 500, 61 S.Ct. at 645 (citations omitted). The United States Supreme Court held that federal courts should abstain from ruling on the merits of a constitutional challenge to a state law:

> The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

**20.** Plaintiff's contention at trial that res judicata should not bar consideration of this issue because of its appeal in the South Carolina courts is without merit. The fact that an appeal is pending has no effect on the preclusiveness of an administrative or judicial determination. Raju v. Rhodes, 809 F.Supp. 1229, 1236 n. 8 (S.D.Miss. 1992); Luebke v. Marine Nat'l Bank, 567 F.Supp. 1460, 1462 (E.D.Wis.1983).

*Id.* The Supreme Court has extended the *Pullman* abstention doctrine to § 1983 suits. *See, e.g., Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). As explained by the Fourth Circuit, *"Pullman* abstention ... is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question." *Meredith v. Talbot County,* 828 F.2d 228, 231 (4th Cir.1987).

The parties presented only skeletal evidence on the issue of whether the pier could have been rebuilt under the City's non-conforming use statute. The Court believes that to decide this issue would require it to revisit the very evidence presented to the Zoning Board and currently being considered by the state courts. If this Court decided this issue, it may be "making a tentative answer which may be displaced tomorrow by a state adjudication." *Pullman Co.,* 312 U.S. at 500, 61 S.Ct. at 645 (citations omitted). As explained *supra,* if the South Carolina state courts ultimately affirm the Zoning Board's ruling, the Plaintiff will have suffered no damages for an unconstitutional taking as it will be precluded from rebuilding its pier in any event. Conversely, a state court ruling reversing the Zoning Board, in combination with the rulings of this Court, will enable the Plaintiff to rebuild its pier and the taking issue will vanish. In either event, "the federal constitutional questions raised in the complaint would disappear." *Meredith,* 828 F.2d at 232. Thus, *Pullman* abstention is certainly appropriate here and prevents this Court from addressing the merits of Plaintiff's takings claim.

### c. Premature Claim—Takings Issue and Attorney's Fees

█ Finally, even if this Court were not faced with issues of *res judicata* and *Pullman* abstention counselling delay in reaching the merits of Plaintiff's § 1983 claim, the Court would be compelled to conclude that Plaintiff's takings claim, and hence its claim for attorneys' fees, is premature. In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S.

172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court held that even assuming that changes in a government zoning ordinance may effect a taking under the Fifth Amendment, a jury's award of damages was premature where the state provides an adequate procedure for seeking just compensation. *Hamilton Bank* involved a § 1983 suit charging that a County Commission's changes to its zoning laws resulted in the taking of a landowner's property without just compensation. The Supreme Court reversed the court of appeals which had reinstated a jury damage award in favor of the land developer's successor in interest.

The Court found the takings claim was premature as "respondent did not seek compensation through the procedures the State has provided for doing so." *Id.* at 194, 105 S.Ct. at 3120. The Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at 3121. "As we have explained, ... because the Fifth Amendment proscribes takings *without just compensation,* no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." *Id.* at 194 n. 13, 105 S.Ct. at 3121 n. 13 (emphasis in original). The Court noted that under Tennessee law, a property owner may bring an inverse condemnation action to obtain just condemnation for an alleged taking of property under the state's eminent domain laws. *Id.* at 196, 105 S.Ct. at 3121. Thus, the bank could recover "through inverse condemnation where the 'taking' is effected by restrictive zoning laws or development restrictions." *Id.* "Respondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature." *Id.* at 196–97, 105 S.Ct. at 3121–22.

South Carolina common law recognizes a cause of action for inverse condemnation.[21] "The elements of an inverse condemnation are (1) an affirmative, positive aggressive act on the part of the government agency, (2) a taking, (3) the taking is for a public use, and (4) the taking has some permanence." *Gray v. South Carolina Dep't of Highways & Pub. Transp.*, 427 S.E.2d 899, 902 (S.C.App.1992) (citation omitted). South Carolina courts have recognized this cause of action exists where a city denies a landowner the use of his land, as opposed to actively seizing the land for some public use. *Hill v. City of Hanahan*, 281 S.C. 527, 316 S.E.2d 681 (App. 1984). In addition, South Carolina's eminent domain law permits landowners to challenge an attempted governmental taking by instituting a nonjury trial to prevent such action. S.C.Code Ann. § 28-2-310 (Law.Co-op.1991). A landowner may recover damages for the taking of his property, as well as attorneys' fees and costs. S.C.Code Ann. § 28-11-70 (Law.Co-op.1991).

Thus, South Carolina law provides adequate procedures for the aggrieved landowner seeking just compensation. While a plaintiff need not exhaust administrative remedies prior to bringing a § 1983 suit, *See, e.g. Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), *Hamilton Bank* is clear that a plaintiff seeking damages for an unconstitutional taking (and hence attorneys' fee flowing from such a taking) *must* "exhaust" the claim if the state provides an adequate process for obtaining compensation: "the property owner cannot claim of violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.*, 473 U.S. at 195, 105 S.Ct. at 3121. Plaintiff has not yet sought to establish a taking by the City pursuant to an inverse condemnation suit under South Carolina common law or the

state code, and, accordingly, this Court FINDS that its claim for attorneys' fee and costs is premature.[22]

## CONCLUSION

The Court FINDS:

1. The Plaintiff has a property interest in the pier;

2. The pier is private and the City has acquired no rights by dedication or prescription;

3. North Myrtle Beach's ordinance 5-14(b) is invalid as ruled by Judge Houck in his July 22, 1990 order.

4. By use of its pier franchise agreement, the City may not revoke the license granted by the Corps of Engineers or the State of South Carolina to build or rebuild the pier.

5. Whether or not the non-conforming use sections of North Myrtle Beach's zoning ordinance preclude rebuilding the pier is an issue to be determined by the South Carolina state courts.

6. The Plaintiff's § 1983 claim for damages and attorneys' fees is premature.

As the Court is precluded from reaching the merits of Plaintiff's constitutional challenge to City ordinance section 5-14(b), it is foreclosed from completing its rulings upon Counts Two, Four, Six, Seven, Eight, Nine and Ten of Plaintiff's complaint. *See supra* n. 4. As previously stated, *supra* n. 6, Counts One, Three and Five were resolved by the agreement of the parties, and, accordingly, are DISMISSED.

The Court will retain jurisdiction over the instant action rather than dismissing it. "The usual rule is to retain jurisdiction in *Pullman* situations . . . ." *Meredith,* 828

---

**21.** "A cause of action against a government agency to recover the value of property taken by the agency, though no formal exercise of eminent domain has been completed." *Black's Law Dictionary* 740 (5th ed. 1979).

**22.** The Court notes that Judge Houck's July 22, 1992 Order struck down the city ordinance on the grounds that it conflicted with South Carolina Code § 48-30-290 as applied. *See supra* n. 8. While it is premature to comment upon the ordinance's constitutionality, it is blatantly op-

pressive. The ordinance mandated that all rebuilt piers be open to the public, without any procedure to determine the piers' status as public or private prior to Hurricane Hugo. Moreover, by including such a non-negotiable requirement as a condition to obtain the requisite pier franchise license, the City in effect was precluding the rebuilding of the piers. Under what rationale does the City expect the private owners of destroyed piers to build, insure and maintain fishing piers for free use by the public?

F.2d at 232 (citing 17 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction §§ 4243, 4245). After the South Carolina state courts have issued a final judgment on the non-conforming use/grandfather issue the Plaintiff may, if appropriate, pursue its state remedies to seek just compensation. Thereafter, this Court, if requested, may address the merits of Plaintiff's section 1983 action and its claim for attorneys' fees and costs.

It is so ORDERED.