21 F.3d 1319
 Arthur M. POMPONIO, Plaintiff-Appellant,
v.
FAUQUIER COUNTY BOARD OF SUPERVISORS; Planning Commission
of Fauquier County, Virginia; Fauquier County, Virginia;
Richard McNear, Planning Director of Fauquier County, in his
official capacity, Defendants-Appellees.
 No. 91-1107.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 1, 1992.
Decided April 15, 1994.
 
 ARGUED: John Francis Cahill, Hazel & Thomas, Falls Church, VA, for plaintiff. Deborah Brand Baum, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for appellees. ON BRIEF: John Holland Foote, Thomas W. Smith, III, Hazel & Thomas, Falls Church, VA, for defendants. Patricia L. Hanower, Shaw, Pittman, Potts & Trowbridge, Washington, DC; Edward J. Finnegan, Shaw, Pittman, Potts & Trowbridge, Leesburg, VA; Paul S. McCulla, Office of the County Atty., Warrenton, VA; Robert S. Corish, Slenker, Brandt, Jennings & Johnston, Merrifield, VA, for appellees.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges, sitting en banc.
 Affirmed by published opinion. Judge WIDENER wrote the opinion of the Court, in which Judges Donald RUSSELL, K.K. HALL, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, and WILLIAMS joined. Judge MURNAGHAN wrote a dissenting opinion, in which Chief Judge ERVIN and Judge PHILLIPS joined.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 The sole issue before us is whether the district court properly applied the abstention doctrine of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), in dismissing this case without prejudice. We hold that Burford abstention was appropriate and affirm the district court's dismissal.
 
 
 2
 * The plaintiff-appellant, Arthur M. Pomponio, brought this Section 1983 action against Fauquier County, the Board of Supervisors of Fauquier County, the Planning Commission, and Richard McNear, in his official capacity as Fauquier County Planning Director, in the United States District Court for the Eastern District of Virginia. The complaint alleged arbitrary behavior, false statements, abuse of authority, and misconduct by local officials during consideration of a preliminary subdivision plan submitted by Pomponio. Because of the misconduct, Pomponio alleged denials of procedural due process, substantive due process, and equal protection. The district court sua sponte entered an order abstaining from jurisdiction based on the Burford doctrine and dismissed Pomponio's claim without prejudice. Pomponio appealed.
 
 
 3
 This dispute stems from a difference of opinion about the correct interpretation of the applicable Fauquier County zoning and subdivision ordinances. The record reveals that Pomponio is a real estate developer. In March of 1989, he contracted to purchase approximately 1,250 acres of property known as Clover Hill, which was located in the RA (agriculture)[1] and RC (conservation)[2] zoning districts. The development of a minor residential development[3] was permitted under the applicable zoning ordinance, as long as certain maximum density and open space requirements were met.[4] Clover Hill had been previously subdivided by recorded plat into 123 building lots and one common lot.[5] Pomponio sought to take advantage of the zoning ordinance, which allowed further subdivision of a lot ten acres or greater in size.[6] He took the position that there were 96 lots in excess of ten acres in size on the original plat, which entitled him to aggregate the dwelling units allowed for each lot to produce an additional 96 dwelling units, then he added two tracts in excess of 20 acres each for six additional dwelling units, plus one dwelling unit each for 27 tracts less than ten acres.[7] Instead of subdividing each lot, however, Pomponio took the aggregate number of dwelling units to which he claimed he was entitled--222[8]--and redistributed them on the entire 1250-acre plat in a cluster arrangement. 212 of the dwelling units were placed on 350 acres with lot sizes between one and three acres, which is an average density of 1.65 acres per dwelling unit. The remaining ten lots were from 25-50 acres in size and are described in Pomponio's application as non-common open space homesites. In addition, Pomponio included a golf course.
 
 
 4
 On June 21, 1989, Pomponio formally submitted a preliminary subdivision plan (the Plan) for review and approval by the Planning Commission of Fauquier County. In late June of 1989, James Green, the member of the Board of Supervisors from Clover Hill's magisterial district, commented negatively about Pomponio's proposed subdivision plan during an interview with the local newspaper. Pomponio has alleged that Green had not yet reviewed the Plan, but stated, "[I]f there is any way to cut it or slow it down, I'm all for it." Thereafter, defendant McNear conducted a review of the Plan and wrote a memorandum, dated July 14, 1989, to Mike Finchum, Planner. The McNear memorandum outlined several problems with the Plan. First, the proposed subdivision of the 10+ acre lots was invalid because the resulting lots ran afoul of sections 2-308, 3-400, and 7300[9] of the zoning ordinance.[10] Second, the ordinance did not allow for the proposed cluster arrangement, which would have required a transfer of density from one lot to another. Finally, the golf course did not qualify under the ordinance as a use in non-common open space. Finchum communicated his concerns, and particularly the concern about the cluster arrangement, to Pomponio's business partner by letter dated July 20, 1989.
 
 
 5
 In the meantime, the Planning Commission's staff prepared a report on the Plan dated August 9, 1989. The staff concluded that 97 of the 98 10+ acre lots could not be subdivided under the zoning ordinance. Certain reductions to the size of the lots were applied in determining whether the lots were eligible for subdivision.[11] As a result, 97 of the lots could not be subdivided. According to Pomponio, the staff was erroneously instructed by defendant McNear to apply the reductions of section 2-308.2 to determine the permitted density of the Clover Hill property. Pomponio argues that the local ordinance did not provide for the reduction in the density of minor residential developments such as Pomponio's, but that the local officials wanted to curtail his plan.
 
 
 6
 Pomponio's complaint against defendant McNear and the reduction calculations attributes weight to the fact that McNear was involved in a proposed amendment of the ordinance to authorize the reduction of permitted density on preliminary plans for minor residential development at the same time that Pomponio's plan was being considered. The proffered evidence of this is a July 17, 1989 memorandum recommending several amendments to the ordinance. However, no amendment to section 2-308 was proposed, and, in fact, the memorandum states that in determining the permitted density for rural areas, "the existing sliding scale would constitute the permitted category."[12] Pomponio further alleges that at the August 9, 1989 Commission meeting, during consideration of Pomponio's plan, McNear informed the Commission that the proposed density of the Plan exceeded the maximum density permitted by law, which was, according to Pomponio, "false." Although Pomponio has used the adjective "false" both in his brief and in the complaint, as is at once apparent, the record supports no more than a difference of opinion in this garden variety zoning dispute.
 
 
 7
 Pomponio vehemently contends that McNear purposefully misconstrued the zoning ordinance. Whether the zoning ordinance was incorrectly construed is the central question in the case. Pomponio asserts that his interpretation is correct and further asserts that because McNear sent the Commission his July 17 memorandum and then met with the Commission to discuss amending the local ordinance two days prior to the Commission's consideration of the Plan, the Commission knew that McNear had made false and misleading legal statements about the Plan. The Commission nonetheless voted to disapprove the Plan on August 31, 1989. For their part, the defendants argue that Pomponio's plan never complied with the applicable ordinances and that there was no subterfuge or conspiracy here.
 
 
 8
 The record reveals that Pomponio fully argued his position on the ordinance to the Commission and provided extensive exhibits. The Commission gave three reasons for denying approval of Pomponio's plan: (1) the proposed layout of the Clover Hill development constituted a density transfer which the state enabling legislation does not permit; (2) the number of lots exceeds the maximum density permitted in the Fauquier County zoning ordinance; and (3) the proposed streets were shown to run across the land of others who had not consented to the streets.
 
 
 9
 Because Pomponio's dispute with the Commission hinged on the interpretation of the local ordinance, on September 5, 1989 Pomponio simultaneously appealed the Commission's decision to the Board of Supervisors, pursuant to Fauquier County Subdivision Ordinance Sec. 9-6, and to the Board of Zoning Appeals, for their determination of the correct interpretation of the local ordinance.[13] Pomponio asked the Board of Zoning Appeals to defer consideration of his appeal until the Board of Supervisors acted. Pomponio apparently reargued his interpretation of the ordinance to the Board of Supervisors, and he also apparently argued that even if the reductions of section 2-308 were applicable, they had not been routinely applied by the Commission in the past and that applying the reductions to him would be arbitrary and capricious. The Board of Supervisors, chaired by Green, who had previously commented negatively on Pomponio's plan to the press, voted to deny Pomponio's appeal on October 17, 1989 and informed him in writing of the decision on October 20, 1989, essentially adopting the reasoning of the Commission. According to Pomponio, the Board of Supervisors had before it a memorandum from the county attorney, dated October 12, 1989, informing the Board that Pomponio was correct in pointing out that other subdivisions had been approved without the density reduction procedures that had been applied to Pomponio's plan.[14]
 
 
 10
 Pomponio appealed the Board of Supervisors' disapproval of the Plan to the local circuit court on October 27, 1989. Pomponio also prosecuted his appeal before the Zoning Board of Appeals, which denied Pomponio's appeal on February 1, 1990, and informed him by letter of the decision on February 2, 1990. The Board of Zoning Appeals relied on its own interpretation of the local zoning ordinances that were at issue and gave thirteen reasons for the denial of the appeal. Pomponio also appealed this decision to the local circuit court by petition for certiorari on March 1, 1990. Pomponio later nonsuited his two state court cases, claiming even later in an affidavit filed in the district court that his right to purchase under the contract had expired in March of 1990 and that the seller of the property refused to extend the contract.[15] The argument goes that he therefore had no remedy available to him under state law, and so he decided to pursue a damages claim under 42 U.S.C. Sec. 1983 in federal court. Pomponio's complaint alleged violation of his federal rights of substantive and procedural due process and equal protection. The defendants filed a motion for summary judgment, which Pomponio opposed. The district court, acting sua sponte, did not act on the summary judgment motion and instead entered an order abstaining and dismissing the case without prejudice. Pomponio then filed this appeal.
 
 II
 
 11
 We review the district court's decision to abstain under the Burford doctrine for an abuse of discretion. Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250-51 (4th Cir.1993) (citing Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir.1988)). We begin with the fundamental proposition that abstention is the exception, not the rule. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 A.
 
 12
 In Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that a federal district court sitting in equity may, in its discretion, decline to exercise its jurisdiction in certain circumstances if abstention is necessary to show proper regard for a state government's domestic policy. 319 U.S. at 317-18. The circumstances present in Burford involved a Texas oil drilling permit and a claim that, in essence, the Texas Railroad Commission had misapplied the Texas oil and gas conservation statutes, although a due process claim also was alleged. New Orleans Public Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 360, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989); see Burford, 319 U.S. at 318, 63 S.Ct. at 1099. The Court noted that Texas had created a central system for expeditious judicial review of the Commission's orders and that the concerns addressed by the Commission were of paramount importance to the localities involved as well as to the State of Texas. Burford, 319 U.S. at 325-32, 63 S.Ct. at 1103-07; see New Orleans Public Service, 491 U.S. at 360, 109 S.Ct. at 2513. The Court stated that federal court intervention would merely confuse state law and it noted that there were conflicts in the decisions of the state and federal courts in drilling permit cases. Burford, 319 U.S. at 327-32, 63 S.Ct. at 1104-07. The Court determined that, in these circumstances, "[i]nsofar as we have discretion to do so, we should leave these problems of Texas law to the state court." 319 U.S. at 332, 63 S.Ct. at 1107. The Court therefore affirmed the district court's decision to dismiss the case. 319 U.S. at 334, 63 S.Ct. at 1107.
 
 
 13
 The Court followed the principle it had outlined in Burford in Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). There the Court relied on the availability of adequate state remedy with court review of the administrative decision in issue, the unified nature of the state regulatory process, and the fact that the outcome of the railroad's due process claim would be determined by the "predominately local factor of public need for the service rendered," 341 U.S. at 347, 71 S.Ct. at 767, in holding that the district court should have abstained from exercising its jurisdiction. 341 U.S. at 350, 71 S.Ct. at 768; see New Orleans Public Service, 491 U.S. at 360-61, 109 S.Ct. at 2513-14. The Court's decisions in Burford and in the Alabama Public Service Commission case, together with the cases on which those decisions relied, established the abstention doctrine known as Burford abstention. See New Orleans Public Service, 491 U.S. at 361, 109 S.Ct. at 2514.
 
 
 14
 The Court next decided Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Relying on the Pullman abstention doctrine,[16] the Court decided, in a diversity jurisdiction eminent domain case which raised no federal constitutional issues and which raised the question of the city's power to appropriate the property under the state statute, that the district judge properly stayed federal court proceedings and retained jurisdiction over the case. The majority opinion did not cite Burford.
 
 
 15
 The Court's decision in Thibodaux has engendered a great deal of discussion about the scope of abstention and when it is appropriate. 17A Wright, Miller, & Cooper, Federal Practice and Procedure Sec. 4241, at 13-17 (2d ed. 1988). Some commentators assert that the Supreme Court's decision in the case created a new type of abstention, the Thibodaux abstention doctrine, which is applied when there is no federal claim and there is a significant and difficult question of state law that concerns matters which are particularly within the province of the state-sovereign to regulate or decide. Martin H. Redish, Federal Jurisdiction: Tensions in the Allocation of Judicial Power 288-92 (2d ed. 1990); cf. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814-15 & n. 21, 96 S.Ct. 1236, 1244-45 & n. 21, 47 L.Ed.2d 483 (1976) (acknowledging that the Burford line of cases is similar to the Thibodaux line, but distinguishing between them). Although our decision today does not rely upon abstention under Thibodaux, we mention it because, as we discuss infra, some of our own land use and zoning abstention opinions illustrate the variance in decisions following Thibodaux.
 
 
 16
 Two of the Court's recent decisions help to clarify abstention under Burford, which is the type of abstention with which we are today concerned. The Court found that abstention as such was inappropriate in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), but nonetheless reinstated the district court's decision to dismiss the complaint for "reasons of wise judicial administration," 424 U.S. at 818, 96 S.Ct. at 1246, because there was a concurrent state proceeding. Although rejecting the application of any of the abstention doctrines, the Court's discussion clarified the proper role of Burford abstention. The Court stated:
 
 
 17
 Abstention is ... appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar.... In some cases ... the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.
 
 
 18
 424 U.S. at 814, 96 S.Ct. at 1244.
 
 
 19
 More recently, the Court had occasion to consider and reject the application of the Burford abstention doctrine in a case that involved the question of federal preemption in New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). The Court further clarified the scope of Burford abstention:
 
 
 20
 Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 21
 491 U.S. at 361, 109 S.Ct. at 2514 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). The Court explained its reasons for rejecting the application of the Burford doctrine in the case:
 
 
 22
 The present case does not involve a state-law claim, nor even an assertion that the federal claims are in any way entangled in a skein of state law that must be untangled before the federal case can proceed....
 
 
 23
 While Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy. Here, NOPSI's primary claim is that the Council is prohibited by federal law from refusing to provide reimbursement for FERC-allocated wholesale costs. Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem.
 
 
 24
 491 U.S. at 361-62, 109 S.Ct. at 2514-15 (internal quotation marks and citations omitted). Thus, the Supreme Court has directed that in the two situations it has described, a federal court must decline to exercise its jurisdiction under the Burford abstention doctrine, and the Court also has explained a few situations in which Burford abstention is not justified.
 
 B.
 
 25
 We now turn to our own decisions that decide the abstention question in cases, like this one, that involve state or local zoning or land use laws. Virtually all of these cases, when stripped of the cloak of their federal constitutional claims, are state law cases. The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the bases for the plaintiffs' federal claims.
 
 
 26
 Our first decision on this issue appears to be Fralin & Waldron, Inc. v. City of Martinsville, 493 F.2d 481 (4th Cir.1974). There, Fralin & Waldron brought an action for a declaratory judgment, injunctive relief, and damages against the city because of its refusal to grant Fralin & Waldron a special use permit or to approve its subdivision plan. Fralin & Waldron argued that a section of the city code was unconstitutional on vagueness grounds, and further argued that the code section had been arbitrarily and discriminatorily applied to it. Fralin & Waldron brought an interlocutory appeal that challenged the district court's decision to abstain from exercising its jurisdiction in the case.
 
 After reviewing the dispute, we stated:
 
 27
 All of [Fralin & Waldron's] claims raise legitimate questions involving municipal zoning ordinances, the correct construction of local land use law as to special use permits, and the delineation of the proper scope and exercise of local administrative discretion. Understandably, the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them. A state adjudication may well avoid the necessity of a decision on the federal constitutional question presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs.
 
 
 28
 493 F.2d at 482-83. Although our reasoning was more consistent with Burford abstention, we concluded that abstention was warranted on the basis of Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).
 
 
 29
 We held that our decision in Fralin & Waldron was controlling in a case on similar facts, Caleb Stowe Associates v. County of Albemarle, Virginia, 724 F.2d 1079 (4th Cir.1984), in which we also applied abstention in a suit grounded on 42 U.S.C. Sec. 1983. We repeat here our discussion of the plaintiffs' contentions in Caleb Stowe because they are indistinguishable for practical purposes from Pomponio's:
 
 
 30
 [T]he plaintiffs, which are the proposed developers of the land, allege that the Board of Supervisors on the undisputed facts before it was required to approve the site plan, and that the disapproval was erroneous under state law. "... [T]he very narrow inquiry to determine the lawfulness of the Board's denial of the Site Plan is whether the sewerage facilities contemplated by the Site Plan are 'substantially in accord' with the Comprehensive Plan's recommended location for such sewerage facilities," the plaintiffs phrase the question in their brief. The plaintiffs further contend a county zoning ordinance controls the comprehensive plan as a matter of state law.
 
 
 31
 Reduced to its essence, the action of the Board is complained of because it either failed or refused to follow, or misconstrued, matters of purely state land use law.
 
 
 32
 724 F.2d at 1080. Once again, our reasoning was consistent with Burford, but we relied upon Fralin & Waldron for the abstention doctrine applied. We relied on Thibodaux with respect to dismissal of the case.
 
 
 33
 In Browning-Ferris, Inc. v. Baltimore County, Maryland, 774 F.2d 77 (4th Cir.1985), we finally applied Burford as an appropriate abstention doctrine in land use and zoning cases. Other than the initial variation in our decisions generated by the application of Thibodaux in Fralin & Waldron, we have applied Burford abstention to land use and zoning cases. See infra note 18. Along the way we have rejected litigants' claims that Burford is inappropriate in the absence of a special state judicial forum. Browning-Ferris, 774 F.2d at 80.[17] We also have reiterated that state and local zoning and land use law is particularly the province of the State and that federal courts should be wary of intervening in that area in the ordinary case. See, e.g., Browning-Ferris, 774 F.2d at 79-80. In light of the Supreme Court's recent guidance on the Burford abstention, in which the Court stated that "we have distilled the principle now commonly referred to as the 'Burford doctrine,' " we are convinced of the correctness of our view, for we believe that cases involving questions of state and local land use and zoning law are a classic example of situations in which "the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " New Orleans Public Service, 491 U.S. at 361, 109 S.Ct. at 2514 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). We can conceive of few matters of public concern more substantial than zoning and land use laws. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); especially id. at 391-95, 47 S.Ct. at 119-21 (the Court's summary of some of the factors going to make up public concern). The proposition is not stated better than by Justice Marshall in dissent in Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974):
 
 
 34
 I am in full agreement with the majority that zoning is a complex and important function of the State. It may indeed be the most essential function performed by local government, for it is one of the primary means by which we protect that sometimes difficult to define concept of quality of life.
 
 
 35
 416 U.S. at 13, 94 S.Ct. at 1543. It is also clear that in most of these cases requiring Burford abstention, the federal claim cannot be untangled from the state or local zoning or land use law. Therefore, we believe that in the usual case federal courts should not leave their indelible print on local and state land use and zoning law by entertaining these cases and, in effect, sitting as a zoning board of appeals, as Justice Marshall so aptly put it in Village of Belle Terre, 416 U.S. at 13, 94 S.Ct. at 1543, or as that board, or a Planning Commission, or Board of Supervisors, as applicable here.
 
 
 36
 Over frequent objections and challenges and in practically every instance, we have held that, absent unusual circumstances, a district court should abstain under the Burford doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law, despite attempts to disguise the issues as federal claims.[18] In those cases in which we have deviated from this view, the unusual circumstances, which reflected the presence of a genuine and independent federal claim, included a valid claim of religious prejudice, Marks v. City of Chesapeake, Va., 883 F.2d 308 (4th Cir.1989),[19] and a claim of federal statutory preemption as well as First Amendment rights, Neufeld v. City of Baltimore, 964 F.2d 347 (4th Cir.1992).[20] We now make plain our decisions: In cases in which plaintiffs' federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances not present here, the district courts should abstain under the Burford doctrine to avoid interference with the State's or locality's land use policy.
 
 C.
 
 37
 In light of the views we express today it is evident that the district court did not abuse its discretion in this case by invoking the Burford abstention doctrine. See Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250-51 (4th Cir.1993) (citing Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir.1988)). Pomponio's claims do not present any of the unusual circumstances that we have recognized which convert an ordinary zoning dispute into a case in which the federal courts must exercise their jurisdiction. Pomponio's argument boils down to an assertion that his plan complied with the zoning laws, and the local authorities wrongfully disapproved his plan by misapplying the laws and by abusing their authority in the decision-making process. In New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court found Burford abstention inappropriate in part because the claim asserted there was not "a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors." 491 U.S. at 362, 109 S.Ct. at 2514. Pomponio's claim is just such a claim, and under the Supreme Court's precedent and our own, the Burford abstention doctrine applies to his case.
 
 III
 
 38
 The final issue we consider is whether the district court, having properly invoked the Burford abstention doctrine, properly dismissed the case instead of retaining jurisdiction. We hold that it did.
 
 
 39
 It is now accepted that the appropriate course of action in a Burford abstention case is to dismiss the suit. 17A Wright, Miller, & Cooper, supra, Sec. 4245; Burford, 319 U.S. at 334, 63 S.Ct. at 1107 (affirming dismissal). But see Ankenbrandt v. Richards, --- U.S. ----, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).
 
 
 40
 Dismissal is the usual rule in this circuit, Meredith v. Talbot County, Md., 828 F.2d 228, 232 (4th Cir.1987), and we are of opinion the district court did not err in dismissing the case without prejudice.
 
 
 41
 The judgment of the district court is accordingly
 
 
 42
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 43
 The majority characterizes Pomponio's argument as one that "boils down to an assertion that his plan complied with the zoning laws, and [that] the local authorities wrongfully disapproved his plan by misapplying the laws and by abusing their authority in the decision making process." The majority affirms the district court's application of the Burford abstention doctrine on the theory that such an argument does not merit federal interference with the State's or locality's land use policies.
 
 
 44
 Had Pomponio appealed an unfavorable decision of the Board of Supervisors or the Board of Zoning Appeals directly to the federal district court asking the federal court to reverse the state Board's decision, Burford abstention would be appropriate. Pomponio did not file such an appeal, however. He did not even commence a federal action until the loss of his contract to purchase the land at issue required him to nonsuit his state claims.
 
 
 45
 Pomponio has not sought an injunction. Pomponio has not requested relief that would directly affect the implementation of the state's or the locality's land use policies. Instead, Pomponio has brought a federal claim under Sec. 1983 for an abuse of process in an attempt to recover damages for his losses. He has alleged specific instances of arbitrary behavior, false statements, abuse of authority, and misconduct by local zoning officials. These claims do not involve difficult questions of state law, nor do they involve a situation where the exercise of federal jurisdiction would disrupt a state's efforts to establish a coherent policy on a matter of substantial import.
 
 
 46
 A ruling by the district court that one or more of the defendants had taken unwarranted or abusive actions in the course of reviewing and disapproving Pomponio's plan would affect only the state's manner of doing business, not the state's substantive land use and zoning policies.* In other words, the resolution of this matter in the district court would not "leave the indelible print [of the federal courts] on local and state land use and zoning law." The appropriate remedy for a Sec. 1983 violation would be an award of damages, not an injunction requiring the state to take a prescribed action regarding the disputed subdivision plan. In fact, Pomponio has lost his opportunity to act on his proposed plan because his purchase contract expired during the pendency of the dispute with state officials.
 
 
 47
 The majority has carved out a group of cases for which Burford abstention would be inappropriate. These cases involve unusual circumstances previously recognized by this court including religious prejudice, federal statutory pre-emption, and First Amendment rights, which convert an ordinary zoning dispute into a case in which federal courts must exercise their jurisdiction. Because the district court dismissed his claim, Pomponio has not had the opportunity to prove the existence of unusual circumstances, such as an apparent conflict of interest in the case of defendant McNear or an abuse of process, that surround his case.
 
 
 48
 We agree that Burford abstention frequently is proper when land use and zoning issues are present, but we believe that Burford abstention is inappropriate when a case involves "local land use issues only in a peripheral sense," and when such issues "are not presented in the context of difficult interpretations of state law of peculiar concern." Neufeld v. City of Baltimore, 964 F.2d 347, 351 (4th Cir.1992). We also emphasize that "abstention is the exception, not the rule, and can only be justified in exceptional cases." Id. at 349. Accordingly, without expressing an opinion with regard to the merits of the substantive issues presented by Pomponio, we maintain that the district court's order abstaining from jurisdiction and dismissing without prejudice Pomponio's complaint should be vacated and remanded for further proceedings.
 
 
 
 [1]
 The Agriculture (RA) District generally contains those areas where agriculture and forestry are the predominant uses or where significant agricultural lands or large lot farmette type residential development exist. The regulations are designed to assist in the protections and preservation of the agricultural uses and to mitigate land use conflicts between agricultural uses and appropriately limited residential development
 Fauquier County Zoning Ordinance Sec. 3-200(2).
 The parties have not filed copies of all of the Fauquier County ordinances that pertain to this case. We obtained a copy from the Virginia Association of Counties, and we assume if there are variances between our copy and the ordinances in effect at the time, such variances are not substantive. If there are substantive variations, we assume that the party aggrieved will promptly bring it to our attention.
 
 
 [2]
 The Conservation (RC) District contains those mountains which are environmentally sensitive, have physical limitations and contain much of the County's timber resource. The regulations are designed with emphasis on the conservation of these areas to minimize the potential adverse environmental impact while providing for compatible very low density residential uses
 Fauquier County Zoning Ordinance Sec. 3-200(1).
 
 
 [3]
 Under the zoning ordinance Sec. 15-200, as pertinent here, a minor residential development is the creation of subdivided lots on any lot of record as of May 21, 1981. Clover Hill had been recorded prior to that date
 
 
 [4]
 Both the RA and RC districts have a maximum possible density of .1 dwelling unit per acre. Fauquier County Zoning Ordinance Sec. 3-401
 
 
 [5]
 These are Planning Commission figures. Pomponio's figures of lot numbers may vary slightly from the county's from time to time, none of which is consequential
 
 
 [6]
 The relevant figures, as set forth in Sec. 15-200 of the ordinance, are:
 Lot size Dwelling units
0-9.99 1
10-19.99 2
20-34.99 3
 
 
 [7]
 Pomponio's other option would have been to vacate the existing subdivision plat and subdivide the entire parcel. However, he then would have been subjected to more stringent density and open space requirements, and had been so advised by the county planner on July 20, 1989. If he had vacated his lots, considered as a 1250-acre tract, the staff report of August 8, 1989 advises the total yield of lots would be 31. Not surprisingly, Pomponio chose to attempt to subdivide within the existing plat
 
 
 [8]
 He actually claimed 225, but included only 222 in his preliminary subdivision plan
 
 
 [9]
 Section 7-300 was dropped as an issue at the hearing before the Board of Zoning Appeals
 
 
 [10]
 Limitation on Subdivision of a Lot
 A lot that exceeds the minimum provisions of this Ordinance may be subdivided to create more lots only where the resultant lots meet such minimum provisions of this Ordinance....
 Fauquier County Zoning Ordinance Sec. 2-401.
 
 
 [11]
 Specifically, the staff applied Fauquier County Zoning Ordinance Sec. 2-308.2(A), (B) & (D) to disqualify the lots. Subsection A allows only half of the maximum density on any portion of a lot that is covered by a flood plain, quarry, or existing body of water. Subsection B allows only 30% of the maximum density on any portion of a lot that is comprised of slopes with a grade greater than 25%. Subsection D excludes from the lot's gross area any area in an existing right-of-way
 
 
 [12]
 RA and RC districts are considered rural zoning districts, Fauquier County Zoning Ordinance Sec. 3-100, so there was probably no change recommended by the memo which is pertinent here
 
 
 [13]
 Pomponio informed each forum that he did not concede that either of them had exclusive jurisdiction and that his dual appeals were intended to preserve all of his administrative remedies. Pomponio also conceded that the staff's interpretation of the ordinance was not a determination by the County Zoning Administrator, which is a prerequisite for appellate jurisdiction in the Board of Zoning Appeals. Fauquier County Zoning Ordinance Sec. 14-208; see Va.Code Ann. Sec. 15.1-496.1. Judicial review in the circuit court is taken from the Planning Commission under Va.Code Ann. Sec. 15.1-475 and from the Board of Zoning Appeals under Sec. 15.1-497. Obviously both administrative bodies considered they had jurisdiction for they decided Pomponio's appeals on the merits
 
 
 [14]
 There is nothing in the record concerning the various incidents at the Board of Supervisors' hearing on Pomponio's appeal. Because of this, we do not know what was argued to the Board and how the Board handled the question of arbitrary application of the density reductions. When this same question arose in the context of the hearing before the Board of Zoning Appeals, McNear stated that all Pomponio argued was that the density calculations were not in the records of the other subdivisions, and that Pomponio could not show any inconsistencies or errors in the interpretation of the ordinance Sec. 2-308, only that the figures had not been kept in the record. Even now, Pomponio does not argue that any steep slope, flood plain, or right-of-way deduction was erroneously made, only that they should not have been made in any event. See also note 20, infra
 
 
 [15]
 This assertion is not supported factually in the record. The contract involved is not an option contract, rather a contract to purchase. It does not mention any expiration date or the like. In fact, Pomponio's lawyer argued to the district court that he objected to the characterization of the contract as an option. Given these facts, the district court was correct when it stated that Pomponio voluntarily gave up his contract rights and his state remedy, and Pomponio's exception to that statement by the district court is not well taken
 
 
 [16]
 Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [17]
 To the extent that Browning-Ferris is inconsistent with Educational Services, Inc. v. Maryland State Board for Higher Education, 710 F.2d 170, 173 (4th Cir.1983), we follow Browning-Ferris. Brandenburg v. Seidel, 859 F.2d 1179, 1193 n. 17 (4th Cir.1988), is in accord with our decision here
 
 
 [18]
 Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, Va., 945 F.2d 760 (4th Cir.1991) (requiring Burford abstention in construing local annexation orders because they were purely local in nature with state remedies available), cert. denied, --- U.S. ----, 112 S.Ct. 1477, 117 L.Ed.2d 620, and cert. denied, --- U.S. ----, 112 S.Ct. 1477, 117 L.Ed.2d 620, and cert. denied, --- U.S. ----, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992); Browning-Ferris, Inc. v. Baltimore County, Md., 774 F.2d 77 (4th Cir.1985); see Neufeld v. City of Baltimore, 964 F.2d 347, 351 (4th Cir.1992) (noting usual rule); Beacon Hill Farm Assocs. v. Loudoun County Bd. of Supervisors, 875 F.2d 1081, 1083 n. 6 (4th Cir.1989) (ordering the district court to consider abstention on remand); Meredith v. Talbot County, Md., 828 F.2d 228 (4th Cir.1987) (relying on both Burford and Pullman abstention). Caleb Stowe and Fralin & Waldron are also on point and were discussed in the text
 
 
 [19]
 Marks was heard in the district court after that court had abstained in order to allow Marks to exhaust his state remedies, which he did
 
 
 [20]
 Neufeld also involved an equal protection claim quite unlike those asserted in the usual zoning case. The ordinance at issue in Neufeld regulated the size of permissible satellite dishes depending upon the nature of the person or entity owning the dish. In the usual case, like Pomponio's, we are faced with a vague equal protection challenge in which the plaintiff claims that the conduct of the zoning officials singled out the plaintiff for unfair treatment, but not because of any particular impermissible factor or legislatively-drawn class. The complaint alleges only that Pomponio's plan received "dissimilar treatment ... without a rational or legally sufficient basis" as compared to the treatment given to similarly-situated properties. Without deciding whether such a claim even states an equal protection claim, we hold that this type of vague allegation is not an unusual circumstance which should change the ordinary rule that Burford abstention should be applied in zoning and land use cases. In all events, a detailed list of such alleged similarly-situated properties was filed by Pomponio with the zoning authorities and was met by an item by item denial and explanation by the county planner, all of which was considered by the Board of Zoning Appeals in rendering its decision in this matter of peculiarly local state law
 
 
 *
 In any event, "[a]s the Supreme Court has emphasized, a federal court should not abstain under Burford just because resolution of a federal question may result in overturning state policy." Neufeld v. City of Baltimore, 964 F.2d 347, 350 (4th Cir.1992)