**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 04-1220**

———————————

FOURTH QUARTER PROPERTIES IV, INCORPORATED;
THOMAS ENTERPRISES, INCORPORATED,

                                         Plaintiffs - Appellants,


        versus

CITY OF CONCORD, NORTH CAROLINA; W. BRIAN
HIATT, Individually and as City Manager of the
City of Concord; RICHARD K. LEWIS,
Individually and as Former Assistant Director
of the Concord Regional Airport and as Current
Interim Director of the Concord Regional
Airport; JOHN W. CROSBY, Individually and as
Former Director of the Concord Regional
Airport,

                                      Defendants - Appellees,


        and

JOHN DOE DEFENDANTS 1 THROUGH 12,

                                      Defendant.

———————————

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  N. Carlton Tilley, Jr.,
Chief District Judge.  (CA-02-908-1)

———————————

Argued: February 3, 2005          Decided: April 13, 2005

———————————

Before WILKINS, Chief Judge, DUNCAN, Circuit Judge, and James C.
CACHERIS, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Chief Judge Wilkins and Judge Cacheris concurred.

**ARGUED:** George Edwin Butler, II, Dahlonega, Georgia,  for Appellants.  Keith J. Merritt, HAMILTON, GASKINS, FAY & MOON, P.L.L.C., Charlotte, North Carolina, for Appellees. **ON BRIEF:** David B. Hamilton, Mark R. Kutny, HAMILTON, GASKINS, FAY & MOON, P.L.L.C., Charlotte, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

DUNCAN, Circuit Judge:

Plaintiffs-Appellants, Fourth Quarter Properties IV, Inc. and Thomas Enterprises, Inc. ("Fourth Quarter"), brought suit against Defendants-Appellees, the City of Concord, et al. ("Concord" or the "City") alleging a taking without just compensation in violation of the Fifth Amendment, a violation of substantive due process under the Fourteenth Amendment, and various state law claims. In response to Concord's motions for judgment on the pleadings, the district court dismissed Fourth Quarter's takings claim as unripe and stayed the remaining claims pending resolution by the state courts pursuant to Burford v. Sun Oil Co., 319 U.S. 315 (1943), which allows a federal court to abstain from hearing matters that are intimately tied to a state government's domestic policy.[1] Fourth Quarter timely appeals. For the reasons given herein, we affirm.[2]

---

[1] The district court also stayed Concord's motion to dismiss Thomas Enterprises, Inc. as a plaintiff. That decision is not before us, and we express no opinion on the merits of that motion.

[2] We have appellate jurisdiction over this interlocutory order because it puts Fourth Quarter "effectively out of court, and its effect is precisely to surrender jurisdiction of a federal suit to a state court." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 714 (1996) (internal quotations and citations omitted); cf. 28 U.S.C. § 1291 (granting appellate jurisdiction over "final decisions" of district courts).

I.

Because the district court granted Concord's motions under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), we accept as true the following well pleaded allegations in Fourth Quarter's complaint. Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002); Anderson v. FDIC, 918 F.2d 1139, 1140 (4th Cir. 1990). Fourth Quarter purchased forty-three acres of land south of the Concord Regional Airport in July 1996, intending to build a shopping center. Concord owns the airport. In October 1998, Concord amended its Unified Devolvement Ordinance ("UDO") to create a "buffer zone" around the airport in which any construction would require, among other things, a Zone Clearance Permit ("ZCP") from the City. The UDO noted that a ZCP "shall be granted" if certain conditions were met. Part of Fourth Quarter's forty-three acres fell within this buffer zone.

Subsequent to these events, the parties began discussions concerning Fourth Quarter's proposed development of the shopping center. As part of these discussions, Fourth Quarter showed Concord its plans for developing the land. After extended negotiations, Concord signed off on these informal plans, leading Fourth Quarter to believe that it met the necessary conditions and that a formal ZCP application would be approved without any problems.

4

Fourth Quarter later applied formally for a ZCP for a proposed Toys R Us building. Its application included a site plan noting both the Toys R Us construction and preliminary sketches for a Garden Ridge store on the property. Fourth Quarter did not seek a ZCP for the Garden Ridge construction at that time. Concord, however, assured Fourth Quarter that it would issue a ZCP for the Garden Ridge store upon formal application.

After the Toys R Us ZCP submission, the Federal Aviation Administration ("FAA") informed Concord that it was contemplating changing runway approaches to the airport in a way that would create a runway protection zone ("RPZ") on part of Fourth Quarter's property.[3] Although the FAA did not have the authority to prevent Fourth Quarter from building in the RPZ, Concord risked losing future federal funding as airport owner if buildings were built in the RPZ.

After meeting with the FAA, Concord informed Fourth Quarter that it had determined that the proposed Toys R Us and Garden Ridge store fell within a federal "no build zone" and that any attempt to challenge this determination would be futile. Fourth Quarter then hired an aviation consultant which informed Fourth Quarter both that federal law placed no direct obligations on it, but rather on

---

[3]Runway Protection Zones are areas that extend beyond runways designed to remove incompatible objects and activities from that ground that could obstruct aircraft operations and that could in turn be endangered by errant aircraft operations.

the City, and that the UDO did not yet incorporate the restrictive no build zone.  Fourth Quarter believed, therefore, that it had the right to a ZCP for the Toys R Us and Garden Ridge locations pursuant to the UDO.

In May, 2001, Fourth Quarter's ZCP for the Toys R Us store was formally denied.  Fourth Quarter never formally applied for a ZCP for the Garden Ridge store, believing that such an application would be futile in light of Concord's representations.  As a result of Fourth Quarter's problems in obtaining the ZCPs, it lost tenants in its proposed shopping center and suffered economic damages.  Although Concord subsequently allowed Fourth Quarter to begin some construction in the no build zone, the City still contends that the no build zone is in place.

Fourth Quarter brought suit in federal district court.  As noted above, the district court dismissed Fourth Quarter's takings claim as unripe and stayed the remaining claims under the Burford abstention doctrine.  Fourth Quarter timely appeals.


II.

Whether a claim is ripe presents a question of law which we review de novo.  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995).  The ripeness doctrine tends not to "involve rigid formulas that can be applied with precision and definiteness."   15 James Wm. Moore et al., Moore's Federal

Practice-Civil § 101.81 (3d ed. 2005).  As the parties concede, <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172 (1985), controls the ripeness issue in this case.  Under <u>Williamson</u>, a Fifth Amendment takings claim is not ripe until 1) there is a final decision as to the challenged regulation's scope, and 2) the governmental body has denied compensation for the taking.  <u>Id.</u> at 186-87.

A.

Before we address the <u>Williamson</u> factors, however, we must determine the alleged takings to which it applies.  Concord argues that, because Fourth Quarter never applied for a ZCP for the Garden Ridge building, we should not consider the alleged taking of the Garden Ridge location.  <u>See</u> <u>Agins v. City of Tiburon</u>, 447 U.S. 255, 260 (1980) (noting that there was "no concrete controversy" when the plaintiff had "not submitted a plan for development of their property as the ordinances permit").  We disagree.

"The so-called 'futility exception' to the final decision requirement for due process takings and just compensation claims . . . excuse[s] the repeated submission of development plans where the submission would be futile."  <u>Eide v. Sarasota County</u>, 908 F.2d 716, 726 (11th Cir. 1990).  On these facts, we hold that it would have been futile as a matter of law for Fourth Quarter to submit a formal application for the Garden Ridge location.

7

Fourth Quarter submitted a formal ZCP application for the Toys R Us construction. The proposed Toys R Us and Garden Ridge constructions involved almost identical issues and concerns, to the point that the Toys R Us ZCP application even referenced the proposed Garden Ridge construction. The parties engaged in extended negotiations involving the Toys R Us application, culminating with Concord rejecting the application and *expressly informing* plaintiffs that *any* further attempt to build in the no build zone would be futile. To force Fourth Quarter to take the time and expense to file a formal application for the Garden Ridge ZCP in the face of this express statement after Fourth Quarter had already submitted one application and the parties had already engaged in extended negotiation would elevate form over common sense. Accordingly, we will apply the Williamson ripeness test to Fourth Quarter's claims concerning both the Toys R Us and the Garden Ridge plans.[4]

---

[4]The often convoluted nature of local zoning disputes counsels against adopting one-size-fits-all rules concerning ripeness. See Eide, 908 F.3d 726, n.17. We emphasize that our holding is based on the combination of facts before us, including, among others, the fact that Fourth Quarter submitted one formal application, the extended negotiations that the parties had concerning this application, and the similarity between the Toys R Us and Garden Ridge construction plans. We do not address whether one of these factors alone would implicate the futility doctrine.

Fourth Quarter admits that Concord has never denied it compensation for the alleged taking and, therefore, that its claim fails the <u>Williamson</u> test set forth above. Fourth Quarter, however, argues that it cannot request compensation or other relief through formal state proceedings because such proceedings are judicial in nature and may result in a res judicata bar of the takings claim in subsequent federal litigation. The court, Fourth Quarter continues, cannot force it to ripen its takings claim if such a ripening will itself prevent the claim from being brought in federal court. Separately, Fourth Quarter contends that its federal takings claim must either ripen or fail in this suit because it is bringing a state inverse condemnation claim in this action.

Fourth Quarter raises an interesting issue regarding the interplay between ripeness and res judicata. However, we need not decide it here. Under North Carolina law, Fourth Quarter had the right to bring an administrative appeal of Concord's decision without involving the state court system. <u>See</u> N.C. Gen. Stat. § 63-33(c). Specifically, state law establishes an administrative Board of Appeals with the power "[t]o hear and decide appeals from any order, requirement, decision, or determination made by [an] administrative agency" related to the enforcement of airport zoning regulations. <u>Id.</u> Appeals to this Board of Appeals "may be taken

9

by any person aggrieved . . . by any decision of the administrative agency," and the Board of Appeals "[has] all the powers of the administrative agency from which the appeal is taken." Id. Fourth Quarter chose not to pursue this administrative remedy.

Had Fourth Quarter brought an administrative appeal under section 63-33, that appeal would have raised no res judicata problems in a subsequent federal suit because unreviewed state administrative decisions have no res judicata effect in subsequent federal litigation. Dionne v. Mayor & City Council of Baltimore, 40 F.3d 677, 685 (4th Cir. 1994). Accordingly, any argument that res judicata concerns should alter or affect the traditional ripeness inquiry in this case is simply misplaced.[5]

---

[5]Had Fourth Quarter brought an administrative appeal under section 63-33, then it would have had thirty days to file for review of the administrative decision in the North Carolina superior court "by proceedings in the nature of certiorari." N.C. Gen. Stat. § 160A-388 (e). We do not address, because it is not before us, whether an administrative appeal without the further recourse to the state courts under section 160A-388(e) would satisfy ripeness. As the Supreme Court has noted, "a mutually acceptable solution might well be reached" during the administrative appeals process which would alter or eliminate the underlying takings claim. Williamson, 473 U.S. at 187 (internal quotation omitted). Because Fourth Quarter chose not to pursue its administrative remedies, we have no way of knowing what Fourth Quarter's claim would look like if it had pursued those remedies.
We also do not address at this time what preclusive effect, if any, future litigation in state court will have on Fourth Quarter's potential takings claim. As an initial matter, any opinion as to how res judicata would operate in a future case would be merely advisory. More fundamentally, a future federal court will be obligated to apply North Carolina, not federal, preclusion rules to determine what preclusive effect, if any, a state court decision has on future litigation. Dionne, 40 F.3d at 682.

Fourth Quarter further argues that the ripeness requirement is met here because it brings its state inverse condemnation claim in the same action.[6]  We do not agree.  The ripeness doctrine requires exhausting administrative remedies such as the one provided by North Carolina in this case because

> [i]f the property owners were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions.  The potential for such administrative solutions confirms the conclusion that the taking issue . . . simply is not ripe for judicial resolution.

Williamson, 473 U.S. at 187 (quoting Hodel v. Virginia Surface Mining & Reclamation Ass'n., Inc., 452 U.S. 264, 297 (1981)). Takings claims require the court to evaluate factors that cannot be ascertained until the state agency arrives at a final position.  As the Supreme Court has noted:

> Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although the question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty, this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations.  Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

---

[6]Fourth Quarter presents no authority to support the position that an inverse condemnation claim will ripen a takings claim brought in the same suit.

11

<u>Id.</u> at 190-191 (internal quotations and citations omitted).

The purpose behind the ripeness requirement is underscored by the facts before us, where informal negotiations between the parties after the initial refusal caused Concord to grant an "exception" to Fourth Quarter that allowed eventual construction of several buildings in the no build zone. Subsequent proceedings might have yielded additional concessions or even eliminated the no build zone entirely. In short, this court has no way of knowing how a formal administrative appeal would have further developed the facts of this case, and that factual development is essential to our analysis.[7]

Fourth Quarter conceded that its takings claim does not satisfy the <u>Williamson</u> ripeness test. Fourth Quarter did not pursue the administrative remedies necessary to present a ripe claim to this court. We therefore affirm the district court's decision to dismiss the claim for lack of subject matter jurisdiction.

---

[7]The Supreme Court has also noted that ripeness concerns prove especially salient when state agencies have yet to evaluate properly a matter before the federal court. <u>See</u> <u>Pub. Serv. Comm'n v. Wycoff Co.</u>, 344 U.S. 237, 247 (1952) ("State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. . . . Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism [than federal interference with state courts].")

III.

After determining that Fourth Quarter's takings claim was unripe, the district court evaluated Fourth Quarter's remaining claims. The court stayed those claims pursuant to the Burford abstention doctrine. See Burford v. Sun Oil Co., 319 U.S. 315 (1943). We now consider that decision.

We review the district court's decision to abstain from hearing these claims for abuse of discretion. Richmond, Fredricksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250-51 (4th Cir. 1993). Federal abstention is the exception and not the rule. Pomponio v. Fauquier County Board of Supervisors, 21 F.3d 1319, 1324 (4th Cir. 1994) (en banc)(overruled in part on other grounds by Quackenbush v. AllState Ins. Co., 517 U.S. 706, 728-31 (1996)). Because Fourth Quarter requests damages and not equitable relief in this action, the federal court may stay the action through abstention, but may not dismiss the action outright. See Quackenbush v. AllState Ins. Co., 517 U.S. 706, 730 (1996) ("[W]e have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether."). Accordingly, we must decide whether the district court abused its discretion in invoking the "exceptional" remedy of abstention to stay the instant case. We hold that it did not.

13

Burford abstention allows a federal court to decline to hear certain matters if such abstention "is necessary to show proper regard for a state government's domestic policy." Pomponio, 21 F.3d at 1324 (citing Burford, 319 U.S. at 317-18). More specifically,

> Burford allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

Quackenbush, 517 U.S. at 726-27 (internal quotations omitted).

The Supreme Court has noted that its precedents "do not provide a formulaic test for determining when dismissal under Burford is appropriate." Id. at 727. Burford abstention is almost never appropriate when a case involves "the presence of a genuine and independent federal claim;" however, courts should not allow litigants to "disguise [state law] issues as federal claims" in order to avoid abstention. Pomponio, 21 F.3d at 1327-28. And, as we have noted:

> In cases in which plaintiff's federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances . . ., the district courts should abstain under the Burford doctrine to avoid interference with the State's or locality's land use policy.

Id. at 1328. Applying these standards, the district court found that Fourth Quarter presented no genuine and independent federal

14

claims but instead only claims related to local land use and zoning law. Accordingly, it stayed the case for resolution in the state court.

Fourth Quarter argues that the district court abused its discretion for two reasons. First, it argues that it presented independent federal claims--its takings claim and substantive due process claim--that preclude <u>Burford</u> abstention. Second, it argues that its "state law" claims are not solely state law zoning claims because they are tied inexorably to federal aviation law.[8] We address these arguments in turn.

A.

First, Fourth Quarter does not raise independent federal claims sufficient to defeat <u>Burford</u> abstention. As discussed above, Fourth Quarter's takings claim is unripe and cannot operate to save the state law claims. Additionally, its federal substantive due process claim is simply a state law claim disguised as a federal claim. In order to succeed on its due process claim,

---

[8]Fourth Quarter also contends that this case does not raise issues of "substantial public import" to North Carolina. This contention contradicts our precedent which notes that "[w]e can conceive of few matters of public concern more substantial than zoning and land use laws." <u>Pomponio</u>, 21 F.3d at 1327. In addition, North Carolina considers zoning to be important enough to merit its own specific administrative and judicial review system. <u>See</u> N.C. Gen. Stat. §§ 63-33(c), 160A-388 (e). In other words, both Fourth Circuit precedent and North Carolina law belie Fourth Quarter's claim that this issue is not of "substantial public import" to North Carolina.

15

Fourth Quarter must establish, inter alia, that Concord engaged in "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 440 (4th Cir. 2002) (internal quotation omitted). One cannot, however, determine whether Concord's actions were arbitrary and irrational without adjudicating the rights and duties of the parties pursuant to the state zoning law at issue. Additionally, determining whether Fourth Quarter could have avoided the City's actions through "pre-deprivation procedural protections" or "post-deprivation state remedies" requires determining what those protections and remedies are under state law. We agree with the district court's assessment that Fourth Quarter's due process claim "is inextricably woven with [its] state law zoning dispute claims." JA 211.[9] Accordingly, the due process claim is not an independent federal claim sufficient to survive Burford abstention.

---

[9]We also note that all of Fourth Quarter's state law claims--which include breach of contract, inverse condemnation, unfair trade practices, negligent and/or willful misrepresentation, and tortious interference with actual and prospective leases--are related to the underlying zoning dispute and that the district court did not abuse its discretion in applying Burford abstention to those claims.

Fourth Quarter also argues that abstention should not apply because Concord's actions are motivated by federal aviation policy. Importantly, however, Fourth Quarter concedes that it is *not* arguing that preemption occurs here. Appellant's Reply Brief at 11. A preemption claim may have operated to present a federal claim sufficient to defeat Burford abstention. See New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 363 (1989) (not allowing Burford abstention when federal preemption was the primary issue presented). However, Fourth Quarter argues only that Concord models its regulations after federal aviation law and that Concord's actions are motivated by a desire to remain in compliance with federal aviation law. A claim of mere federal influence, without more, does not rise to the level of a preemption claim necessary to defeat abstention.

Fourth Quarter's arguments also contradict well-settled law which establishes that land use and zoning decisions, even concerning land by airports, are matters of local, not federal, concern. As other courts have recognized, "[t]he [Federal Aviation Administration] has acknowledged that land use matters within the federal aviation framework are intrinsically local." Gustafson v. City of Lake Angelus, 76 F.3d 778, 784 (6th Cir. 1996); see also Skysign Int'l v. City & County of Honolulu, 276 F.3d 1109, 1117 (9th Cir. 2002) (upholding a local "land use ordinance" in part

17

because federal aviation law does not "preclude local regulation . . . that does not actually reach into the forbidden, exclusively federal areas, such as flight paths, hours, or altitudes"); Greater Orlando Aviation Auth. v. FAA, 939 F.2d 954, 959 (11th Cir. 1991) (noting that "the FAA does not have jurisdiction [over] local zoning"); Condor Corp. v. City of St. Paul, 912 F.2d 215, 219 (8th Cir. 1990) ("We see no conflict between a city's regulatory power over land use, and the federal regulation of airspace, and have found no case recognizing a conflict.").

In fact, as Fourth Quarter's own aviation expert noted, local control over land use and zoning issues is so well established that "[t]he FAA is not [even] empowered to prohibit or limit proposed construction it deems dangerous to air navigation." Aircraft Owners and Pilots Ass'n v. FAA, 600 F.2d 965, 967 (D.C. Cir. 1979) (holding that an FAA determination that proposed construction would pose a hazard to air navigation did not present a ripe claim because the determination was not legally enforceable). The FAA instead exerts only a "practical impact" on local land use by "encouraging . . . voluntary cooperation." Id. As the FAA itself has acknowledged, "[z]oning is a power reserved to the states under the U.S. Constitution. . . . Neither the FAA nor any other agency of the Federal government has zoning authority." Federal Aviation Administration Proposed Policy Statement and Request for Comment, 60 Fed. Reg. 14701 (March 20, 1995). In other words, the zoning

18

laws at issue in this case are--like state zoning laws everywhere-- squarely issues of local, not federal, law.

To be sure, in its dealings with Fourth Quarter, the City may have been motivated in part by a desire to maximize its eligibility for potential federal funding in the future. Such potential influence, however, does not approach the level of preemption. Fourth Quarter does not ask us to interpret FAA laws or regulations, nor does it ask us to pass on the constitutionality of the state scheme or its compliance with federal statutory law. In fact, Concord's compliance (or lack thereof) with federal law is not at issue in this case. We are presented solely with the issue of whether, under state zoning law, Concord's actions toward Fourth Quarter obligate it to pay damages to Fourth Quarter. As our precedent holds, that issue is uniquely suited for Burford abstention:

> In cases in which plaintiff's federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances . . ., the district courts should abstain under the Burford doctrine to avoid interference with the State's or locality's land use policy.

Pomponio, 21 F.3d at 1328.

IV.

The district court properly dismissed Fourth Quarter's takings claim because it was unripe. Additionally, the district court did

19

not abuse its discretion in staying Fourth Quarter's remaining state law claims and federal due process claim under <u>Burford</u>.[10] The decision of the district court is therefore

<u>AFFIRMED</u>.

---

[10]Fourth Quarter also asks us to "clarify" which issues of state law must be resolved by state courts under the district court order. We believe that the district court order and our precedents are clear: The state court should hear all of Fourth Quarter's claims related to or inextricably intertwined with the zoning law at issue in this case. <u>See</u> <u>Pomponio</u>, 31 F.3d at 1327 (noting that "federal courts should not leave their indelible print on local and state land use and zoning law"). Whether Fourth Quarter chooses to reserve some of its other claims for potential future adjudication in another forum (subject, of course, to potential claim and issue preclusion) is a strategic litigation decision on which we express no opinion.