**Mary SKIPPER, et al.**

v.

**HAMBLETON MEADOWS ARCHITECTURAL REVIEW COMMITTEE, et al.**

No. CCB–97–3697.

United States District Court, D. Maryland.

Feb. 24, 1998.

Andrew D. Levy, Martin H. Schreiber, II, Brown, Goldstein and Levy, Baltimore, MD, Beth Pepper, Stein & Schonfeld, Baltimore, MD, for Plaintiffs.

David R. Thompson, Cowdrey, Thompson & Karsten, Easton, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now pending is the defendants' motion for abstention in this case alleging discrimination on the basis of a handicap in violation of the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, Pub.L. No. 100–430, 102 Stat. 1619 (adding handicap and familial status to list of impermissible bases of discrimination), codified at 42 U.S.C.A. §§ 3601 – 3631 (1994) ("FHA"). No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons that follow the motion will be denied.

## BACKGROUND

According to the amended complaint, the plaintiffs consist of three elderly disabled women ("the tenants") and a married couple, Raymond and Phyllis Sanders ("the Sanders"), all of whom reside together in a group home for people with disabilities owned by the Sanders, called "Rayland Acres." The defendants consist of an unincorporated association, the Hambleton Meadows Architectural Review Committee, and 19 residents[1] of the Hambleton Meadows Subdivision in Trappe, Maryland, located in Talbot County on Maryland's Eastern Shore. For simplicity the defendants will be referred to in this opinion collectively as "HMARC."

By letter dated July 18, 1997, HMARC informed the Sanders of its belief that the Sanders' use of their home to provide housing and services to their elderly tenants violated both a local zoning ordinance and a restrictive covenant included in the Sanders' deed of ownership.

You are hereby informed that the operation of a nursing care facility on your lot is clearly a violation of your deed covenants and restrictions. Pursuant to article III paragraph 7(a), "No store or other place of commercial enterprise shall be erected or maintained or kept on any lot." The operation of a nursing care facility goes far beyond Talbot County's description of a "group home" and is hereby ordered removed.

Pursuant to article III paragraph 10 you are ordered to cease and desist the operation of the nursing care facility on your lot within 15 days of this letter. Your nursing care patients should be relocated to an appropriate licensed care facility located outside of the Hambleton Meadows subdivision.

. . .

Failure to comply with this directive will result in further legal action by the Hambleton Meadows Architectural Review Committee, for which pursuant to article III paragraph 10, you are financially responsible.

(Am.Compl.Ex.A.) HMARC also sent a copy of this letter to the Talbot County Office of Planning and Zoning, *id.* ("cc:" designation), which responded by letter dated August 13, 1997. The Office of Planning and Zoning informed HMARC that it had concluded, following its review of the applicable zoning regulations, discussion with the Maryland Department of Health and Mental Hygiene, and a site inspection of the Sanders' home, that "this is a group home and not a nursing facility.... [W]e do not find the operation of the Sanders' group home in violation of any provision of the Talbot County Zoning Ordinance.... [T]he use of the Sanders' home as a Group Home is a permitted use and such may continue as established." (*Id.* Ex. B at 2, 3.)[2]

On or about September 10, 1997, HMARC filed suit against the Sanders in the Circuit Court for Talbot County, alleging that the

---

1. Five of the resident defendants also are sued in their official capacities as members of the architectural review committee.

2. The Office of Planning and Zoning letter also informed HMARC of its appeal rights; however, nothing in the record so far before this court indicates whether or not appeal has been or will be pursued.

Sanders' use of their home violated the restrictive covenant. HMARC requested relief in the form of "an injunction, ordering [the Sanders] to cease and desist the operation of Rayland Acres," and an award of its attorney's fees and costs. (Def.'s Mem.Ex. 1, HMARC Talbot County Compl. ¶ 26.)[3]

On November 4, 1997, the Sanders and the tenants filed suit in this court alleging that HMARC's actions in seeking to enforce the zoning laws and filing the state court suit constitute unlawful discrimination against handicapped persons in violation of the FHA.

On November 6, 1997 the Sanders filed a motion to stay the state court proceeding pending resolution of this case.

On December 8, 1997, HMARC filed this motion for abstention under the so-called *Pullman* and *Colorado River* doctrines.

### ANALYSIS

"Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

The Supreme Court has identified three general categories of cases where ab-

stention is appropriate. *Pullman* abstention, named (like the other abstention doctrines) for the case which announced it, *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is appropriate where there exist unsettled questions of state law that may dispose of the case and avoid the need for deciding a federal constitutional question or cause it to be presented in a different posture. *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244; *Meredith v. Talbot County, Md.*, 828 F.2d 228, 231 (4th Cir.1987). Second, *Burford* abstention, announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), seeks "to prevent a federal court from interfering with a ' "complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded." ' " *Meredith*, 828 F.2d at 231 (quoting *Browning–Ferris, Inc. v. Baltimore County, Md.*, 774 F.2d 77, 79 (4th Cir.1985) (internal quotation omitted)); *see also Ad%8Soil Serv. v. Board of Cty. Comm'rs*, 596 F.Supp. 1139, 1141 (D.Md.1984). Because this case does not involve a state regulatory scheme of any kind, *Burford* abstention is inapplicable. The third category, under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is also inapplicable here, as *Younger* abstention applies only where federal court jurisdiction has been invoked to restrain a state civil or criminal law enforcement proceeding. *Colorado River* announced what some courts have termed a fourth abstention category, although the Supreme Court refuses to refer to the principles announced in that case as abstention. *See Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. That distinction in terminology may have been lost and is not relevant to the issues to be decided here, so for ease of

---

**3.** HMARC also alleged that the Sanders had begun construction of an addition on their home without prior approval in violation of another restrictive covenant (Count 2), and sought a preliminary injunction to stop the alleged construction (Count 3), (Def.'s Mem.Ex. 1, HMARC Talbot County Compl. ¶¶ 27 – 36). Those counts subsequently were withdrawn. (Order of Circuit Court for Talbot County dismissing Counts 2–3 without prejudice, Pl.'s Opp.Ex. A.) The plaintiffs here allege that this allegation was made "falsely and maliciously," (Am.Compl.¶ 27). HMARC vigorously contends that the allegation was made in good faith based on information allegedly obtained from the Sanders regarding their plans for construction. (Def.'s Reply at 2–5 and Ex. A.) These events are of no relevance to this motion, however, given the basis for the court's holding denying abstention, *infra*, and will not be mentioned further.

reference *Colorado River* will be treated as an abstention doctrine. *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 253 n. 20 (4th Cir.1993) ("Although the Supreme Court made clear that the *Colorado River* doctrine was technically not a form of abstention, ... the distinction has been lost, and we see no reason to revive it.") *Colorado River* abstention, which concerns a very limited doctrine of deference to parallel state court litigation, will be discussed below.

### A. *Pullman Abstention*

As described above, *Pullman* abstention requires that a state court's disposition of an unsettled state law issue either render moot or present in a different posture a substantial federal constitutional issue which is before the court. "[A]bstention under *Pullman* rests upon three rationales: (1) the avoidance of friction between federal and state courts; (2) the avoidance of erroneous interpretations of state law; and (3) the avoidance of unnecessary constitutional rulings." *Stuart Circle Parish v. Board of Zoning Appeals of City of Richmond,* 946 F.Supp. 1225, 1230 (E.D.Va.1996) (citing Erwin Chemerinsky, *Federal Jurisdiction,* at 688 (2d ed.1994)).

■ Initially, it is not clear that this case presents a federal constitutional issue, as the plaintiffs' claims arise not under the constitution but the FHA, a federal statute. *See Propper v. Clark,* 337 U.S. 472, 490, 69 S.Ct. 1333, 1343, 93 L.Ed. 1480 (1949) ("Where a case involves a nonconstitutional federal issue ..., the necessity for deciding which depends upon the decision on an underlying issue of state law, the practice in federal courts has been, when necessary, to decide both issues."). HMARC argues, however, that if this federal court lawsuit proceeds, it will assert three arguments for the unconstitutionality of the FHA as applied to this case under the Commerce and Takings Clauses, and the First Amendment. HMARC in its answer to the amended complaint asserted none of these constitutional defenses to the plaintiffs' FHA claims, however, and raised them for the first time only in its reply brief, so the plaintiffs have not had the opportunity

to address them. But even assuming—without deciding—that these constitutional questions are substantial enough to satisfy the 'avoiding unnecessary constitutional adjudication' prong of *Pullman* abstention, *cf.* David Franklin, *Comment: Civil Rights vs. Civil Liberties? The Legality of State Court Lawsuits Under the Fair Housing Act,* 63 U.Chi.L.Rev. 1607, 1638 (1996) (arguing that, consistent with the First Amendment, "lawsuits [to enforce local land use regulations] should be subject to liability under the FHA [only] when they are intentionally targeted to harm protected groups"), there is no issue of state law the resolution of which may render moot or present the federal constitutional questions in a different posture. *Pullman* abstention will accordingly be declined on the lack of a potentially dispositive state law issue, which will now be discussed.

HMARC argues that if the state court finds under the restrictive covenant that the Sanders' use of their home is residential rather than commercial, and therefore that the Sanders did not violate the restrictive covenant, there will be no need for resolution of any federal issues; and if the use is found to be commercial and therefore prohibited by the restrictive covenant, the FHA is never implicated because the Sanders had no legal right to rent rooms to anyone, regardless of their status. The plaintiffs counter that HMARC's efforts to enforce the covenants have already violated the FHA—a violation that will not go away regardless of the result in the state court. Resolution of this question first requires an examination of liability standards under the FHA.

Under the Fair Housing Act, it shall be unlawful

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter,

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of

sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person.

(3) For purposes of this subsection, discrimination includes—

. . .

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. . . .

42 U.S.C.A. § 3604(f). The implementing regulations promulgated by the Department of Housing and Urban Development prohibit both "[e]nforcing," 24 C.F.R. § 100.80(b)(3), and "[r]epresenting that covenants or other deed, trust or lease provisions which purport to restrict the sale or rental of dwellings because of . . . handicap . . . preclude the sale [or] rental of a dwelling to a person," 24 C.F.R. § 100.80(b)(2). The House Judiciary Committee Report accompanying the 1988 amendments to the FHA which added § 3604(f) (there was no accompanying Senate Report) stated unequivocally that subsection (f)(2)

is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual's handicap and which have the effect of excluding, for example, congregate living arrangements for persons with handicaps. . . . To the extent that terms [or] conditions . . . operate to discriminate against a person because of a handicap, elimination of the discrimination would be required in order to comply with the requirements of this subsection. . . . The Act is intended to prohibit the application of special requirements through land-use regulations [and] restrictive covenants . . .

that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.

H.R.Rep. No. 100–711, at 23–24 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2184–85. Similarly, § 3617 declares it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C.A. § 3617.

The Fourth Circuit, in a case addressing the ripeness of an FHA claim, arguably has settled the question of whether a violation of the FHA may occur when enforcement of a restrictive covenant or zoning ordinance is used to exclude handicapped persons from a group home—regardless whether or not the local law was violated. *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597 (4th Cir.1997). The plaintiff in *Bryant Woods* owned and operated, through his corporation, a group home for elderly persons suffering from Alzheimers disease and other forms of dementia and disability. He applied to the county for a zoning variance allowing him to increase the number of elderly residents in his group home, but the application was denied. He then sued in federal court under the FHA, alleging that the county's denial of the variance constituted discrimination against the handicapped. The county contended that the claim was not yet ripe because the plaintiff, before suing, was required to exhaust his administrative remedies, for the zoning board's denial might be overturned on appeal. *Id.* at 599–601.[4] Rejecting the county's contention, the Fourth Circuit held that "[u]nder the Fair Housing Act . . . a violation occurs when the disabled resident is first denied a reasonable accommodation, *irrespective of the remedies granted in subsequent proceedings.* Bryant Woods Inn has alleged a completed violation of the Fair Housing Act, which is conse-

---

**4.** The county argued in the alternative that *Burford* abstention was appropriate, but the Fourth Circuit disagreed on the ground that interpretation of local laws was not necessary to reach the federal FHA claims. HMARC makes a similarly unavailing argument in this case, which is addressed *infra* at 485–486.

quently ripe for review." *Id.* at 602 (emphasis supplied).

■ This conclusion is in accord with a substantial and growing number of courts holding that the use of restrictive covenants or local zoning ordinances to discriminate against handicapped persons violates the FHA irrespective of whether as a matter of state law those covenants or ordinances were violated. HMARC has cited no contrary authority, and the court's own research has found none. As one court explained:

At the outset, we want to make clear that we think the issue of whether or not the use of the premises at 50–52 Vassar Road violates Audubon's zoning ordinance is not an issue for this court to decide. That issue is a state law question which ... is presently before the Audubon Municipal Court. In this action, we are concerned only with the question of whether or not, even assuming that the use of the premises violates Audubon's zoning ordinance, plaintiff is entitled to the relief it seeks because Audubon has discriminated against individuals on the basis of a handicap.

*United States v. Borough of Audubon, N.J.,* 797 F.Supp. 353, 357 (D.N.J.1991), *aff'd mem.,* 968 F.2d 14 (3d Cir.1992); *see also United States v. Wagner,* 940 F.Supp. 972, 979 (N.D.Tex.1996) ("Since the FHA Amendments took effect, courts have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods."); *Martin v. Constance,* 843 F.Supp. 1321, 1325 (E.D.Mo.1994) (holding enforcement of restrictive covenant to oppose group home for handicapped persons violated FHA); *United States v. Scott,* 788 F.Supp. 1555, 1556, 1562 (D.Kan.1992) (holding that defendants violated the FHA "[b]y attempting to enforce a restrictive covenant to prevent handicapped individuals from residing in their neighborhood," where state court had previously held under state law that plaintiffs had not violated the restrictive covenants); *Oxford House, Inc. v. Township of Cherry Hill,* 799 F.Supp. 450, 461 (D.N.J.1992) (holding prima facie case of disparate impact established where Township's interpretation of zoning ordinance served to exclude group homes for handicapped persons); *Oxford House–Evergreen v. City of Plainfield,* 769 F.Supp. 1329, 1337 (D.N.J.1991) (holding *Pullman* abstention inappropriate; "Plaintiffs' claims of intentional discrimination in violation of the Fair Housing Act ..., based on singling plaintiffs out for enforcement action, may remain whether or not defendants' actions are justified under state law."); *Hill v. Community of Damien of Molokai,* 121 N.M. 353, 911 P.2d 861, 871–76 (1996) (having concluded that group home's actions did not violate restrictive covenant under state law, the court then explained that enforcing the covenant as interpreted by the plaintiffs would violate the FHA); *Deep East Texas Regional Mental Health and Mental Retardation Services v. Kinnear,* 877 S.W.2d 550, 558 (Tex. App.1994) (holding that restrictive covenants had not been violated, and that plaintiffs violated FHA "by attempting to enforce the challenged restrictive covenants to prevent mentally handicapped individuals from residing in their neighborhood"); *Rhodes v. Palmetto Pathway Homes, Inc.,* 303 S.C. 308, 400 S.E.2d 484, 486 (1990) ("find[ing] that enforcement of this restrictive covenant would have the effect of depriving the mentally impaired of rights guaranteed under the Fair Housing Amendments Act"). *Cf. United States v. City of Parma, Ohio,* 494 F.Supp. 1049, 1099 (N.D.Ohio 1980) (finding FHA violation based upon race, explaining that "[a]ctions which are typically lawful, such as a mandatory referendum on housing and zoning matters, ... lose that character when they are undertaken for a discriminatory purpose") (citing *Hunter v. Erickson,* 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969), and *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967)), *aff'd,* 661 F.2d 562, 576 (6th Cir.1981) ("zoning decisions which have a racially discriminatory effect have been held to violate the Fair Housing Act"); *Fralin & Waldron, Inc. v. County of Henrico,* 474 F.Supp. 1315, 1319 (E.D.Va.1979) (refusing abstention in case involving discrimination based on race under 42 U.S.C. §§ 1983 and 1985(3), for although issue as to state land use policies would be presented, sole question for federal court was whether, "whatever permissible land use fac-

tors *could have been* considered, a discriminatory purpose was *in fact* the principal consideration motivating the defendants to take the action they did"); *id.* at 1318 & n. 1 (holding *Pullman* abstention inappropriate because FHA claim of racial discrimination would remain regardless of state court's resolution of zoning issues).

HMARC next argues that abstention is appropriate because interpretation of the restrictive covenant is a matter of local property law, an issue where state courts have special expertise and federal intervention is unwarranted. The three cases it cites in support, however, all combined *Burford* with *Pullman* abstention and involved complex zoning schemes. *See Meredith,* 828 F.2d at 232 (explaining that the "procedures, programs, statutes, regulations, planning boards, and officials involved in the subdivision approval process qualify zoning in Talbot County, Maryland, as being governed by a complex state regulatory scheme"); *Ad + Soil,* 596 F.Supp. at 1143 (holding *Burford* abstention proper where zoning scheme involved); *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455, 462 (D.Md.1978) (explaining that "[l]and use regulation by zoning is 'distinctly a feature of local government' which is 'outside the general supervisory power of federal courts' "(citation omitted)). As previously explained, however, no such state regulatory scheme is implicated by the restrictive covenant, so HMARC's argument that the reasoning in cases finding both *Pullman* and *Burford* abstention principles applicable is unavailing; that some cases have found it appropriate to apply both *Pullman* and *Burford* abstention principles does not make such analysis appropriate in every case.

Moreover, even if the restrictive covenant at issue here did represent the sort of complex regulatory scheme found in *Burford,* this court is not asked to interpret that scheme. The Fourth Circuit recently held *Burford* abstention inappropriate where the plaintiff, in raising an FHA claim, did not "contest the interpretation of local law, but argue[d] that a federal antidiscrimination statute requires the county to make accommodation to its properly interpreted zoning ordinance. Hence," the court explained, "we

are not in danger of misapplying local laws because of the impossibility of unraveling the skein of federal claims and the interpretation of local law." *Bryant Woods,* 124 F.3d at 602. Although in the instant case the Sanders' restrictive covenant has not yet been interpreted under state law, as had been the zoning ordinance in *Bryant Woods,* that difference is not significant. For here the plaintiffs argue that HMARC's attempted enforcement of the restrictive covenant violates the FHA—whatever its validity under state law. It is true that if the state court were eventually to hold that the Sanders violated the restrictive covenant as a matter of state law, and this court were to hold that the covenant's enforcement by HMARC nevertheless violated the FHA, a conflict between federal and state law would appear; that conflict, however, would be resolved by the Supremacy Clause, and is not the sort of inconsistent adjudication between state and federal courts whose avoidance is contemplated by *Burford* abstention. No danger of "misapplying local laws" appears in this case, for no local laws will be construed. *Bryant Woods,* 124 F.3d at 602; *cf. Stuart Circle Parish,* 946 F.Supp. at 1230–31 (holding *Pullman* abstention inappropriate where "plaintiffs have not asked the Court to interpret the City Code. Thus, abstention would not serve to avoid an erroneous interpretation of state law"); *Pomponio v. Fauquier County Bd. of Sup'rs,* 21 F.3d 1319, 1328 (4th Cir.1994) (en banc) (affirming *Burford* abstention where plaintiff's argument "boils down to an assertion that his plan complied with the zoning laws, and the local authorities wrongfully disapproved his plan by misapplying the laws and by abusing their authority in the decision-making process").

Finally, HMARC argues that even if resolution of the state court issues would not dispose of this case, the state court's decision would nevertheless "modify" the presentation of the federal issues before this court. Because the plaintiffs have alleged that the state court suit was "meritless and intended to harass and intimidate them, and maliciously deprive them of their rights under the Fair Housing Act," (Compl. ¶ 28; *see also* ¶ 29), HMARC asserts that the state court is

in a better position to determine those issues. But even if HMARC is correct in its argument, no basis for *Pullman* abstention would emerge for the simple reason that only the statutory FHA issues would be modified, and not the constitutional ones. In any event, the issue of HMARC's intent in attempting to enforce the restrictive covenant is not an issue before the state court, for only the question of the covenant's interpretation is presented to that forum; it is therefore difficult to imagine how the issue of intent could be modified. HMARC also argues that the merit of its state court suit should be decided by the state court. This argument incorrectly assumes, however, that the FRA is irrelevant to that inquiry, and misconstrues the plaintiffs' complaint, which alleges that regardless of the validity of the restrictive covenant under state law, its attempted use by HMARC to exclude the plaintiffs' group home from the community was meritless precisely because such action is prohibited under the FHA. To the extent, if any, that the merit of HMARC's state court suit viewed solely as a matter of state law is relevant here, it can only be so *regarding the proper remedy* in the event that an FHA violation is found, and not to abstention to decide the merits of the FHA claims. *See Fralin & Waldron,* 474 F.Supp. at 1319 & n. 2 (because court was not asked to review the propriety of state land use policies, abstention was inappropriate; noting however that if federal court found discriminatory purpose under 42 U.S.C. § 1983 in city's enforcement of zoning restriction, and state court determined that there were adequate technical reasons why plaintiff's housing project should not be built on the land in question, the federal court may then find that although a damages award is warranted, an injunction ordering rezoning would be contrary to the public interest); *Hill,* 911 P.2d at 870, 877 (refusing to award attorney's fees for FHA violation in light of defendant's nondiscriminatory justification for attempting to enforce restrictive covenant and trial court's finding that group home would cause increase in neighborhood traffic). *But see Wagner,* 940 F.Supp. at 982 (holding state court suit brought to enforce restrictive covenant violated FHA, and was not protected under

First Amendment, in part because it had "no reasonable basis in law or fact"; concluding that "[i]t appears that Defendants' lawyers completely ignored the federal FHA, federal case law regarding group homes, the Equal Protection Clause, ... the landmark case *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 ... (1985), [and] the ancient principle of the primacy of federal law").

### B. *Colorado River Abstention*

■ *Colorado River* abstention allows a district court to stay or dismiss pending litigation "out of deference to ... parallel litigation brought in state court." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 13, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983). As the Court has explained, *Colorado River* rests "not on considerations of state-federal comity or on avoidance of constitutional decisions, as do[ other forms of] abstention, but on 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."'" *Id.* at 14–15, 103 S.Ct. at 936 (1983) (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (citation omitted)) (alteration in original). The Fourth Circuit has interpreted Colorado River abstention as follows:

> When a litigant urges abstention on the ground that concurrent federal and state suits present exceptional circumstances, the district court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums. *La-Duke v. Burlington N.R.R. Co.,* 879 F.2d 1556, 1559 (7th Cir.1989). Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, the existence of proceedings in state court does not by itself preclude parallel proceedings in federal court. 424 U.S. at 818, 96 S.Ct. at 1246–47. The court must consider factors identified in *Colorado River* and *Moses H. Cone* to establish whether "exceptional circumstances" exist. The factors to be consid-

ered include the following: (a) the assumption by either court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the desire to avoid piecemeal litigation; (d) the order in which the courts obtained jurisdiction; and (e) the source of applicable law. *Moses H. Cone,* 460 U.S. at 15–16, 23, 103 S.Ct. at 936–37, 941; *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47. The Supreme Court has cautioned that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

*New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073–74 (4th Cir.1991). " *'Only the clearest of justifications will warrant dismissal.'* " *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937 (quoting *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247) (emphasis in original).

As to the threshold matter of whether the suits are parallel, the parties in both actions differ somewhat because only the Sanders were named as defendants in the state court suit, while the Sanders and the tenants are plaintiffs in the instant federal action. HMARC argues that the tenants' rights are merely derivative of the Sanders' rights. Given, however, that under the FHA each group of plaintiffs (landlords and tenants) has a cause of action for violation of distinct rights, it would appear that the parties are not "substantially the same." *New Beckley,* 946 F.2d at 1073; *cf. Kessler Inst. for Rehab. v. Mayor,* 876 F.Supp. 641, 661 (D.N.J.1995) (reasoning that operator of health care facility for disabled persons seeks to enforce its rights under the FRA to be free from discrimination based upon its association with disabled persons, while the disabled persons seek to be free from discrimination on the basis of their own disability). In any event, the issues in each suit are in no way substantially the same, for as explained at length in the preceding discussion of *Pullman* abstention, the state court suit involves interpretation of the restrictive covenant, and the federal action involves the FHA claims. Thus the plaintiffs' "personal rights, as asserted in the federal ... case, are not now protected in state proceedings." *McLaughlin v. United Virginia Bank,* 955 F.2d 930, 935 (4th Cir.1992) (explaining that "a breach of contract claim pending in the federal case is not pending, nor has it ever been pending, in any state court proceeding"). "[A] federal court presented with [plaintiff's] claim[s] may not surrender its jurisdiction in deference to a state proceeding which could only potentially adjudicate his claims," *Id.* at 936 (reversing district court's surrender of its jurisdiction in deference to state court proceeding because the two actions were not parallel); *see also New Beckley,* 946 F.2d at 1073 (reversing district court's surrender of jurisdiction under *Colorado River* where issues in state suit differed significantly from those in the federal action).

Even if the threshold requirement that the two suits be parallel were satisfied, however, the requisite "extraordinary circumstances" are simply not present. While the state court may first have asserted jurisdiction over the property involved, as HMARC claims, and the Talbot County forum may be slightly more convenient for the parties than Baltimore, the other factors are either neutral or weigh in favor of the plaintiffs. The suits were filed two months apart, and no more progress has been made in the state court suit than in this one. *See New Beckley,* 946 F.2d at 1074 (holding that the order in which the courts asserted jurisdiction "matters little," since plaintiff filed the suits in March and December of the same year). No danger of piecemeal litigation exists, for as discussed previously the FHA claims are independent of the state court issue. And while HMARC correctly asserts that the state court has concurrent jurisdiction over the plaintiffs' FHA claims, the fact that the source of law for those claims is federal "militates in favor of retention of jurisdiction." *Id.* "Although in some rare circumstances the presence of state-law issues may weigh in favor of ... surrender [of jurisdiction], the presence of federal law issues must always be a major consideration weighing

against surrender." *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942.

Thus, no basis exists for this court to abstain from exercising its jurisdiction over the plaintiffs' FHA claims.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1.   the defendants' motion for abstention is **DENIED;** and

2.   copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.